**REFUGIO REFINERY v. SPEED.**

No. 10714.

Court of Civil Appeals of Texas. San Antonio.

April 10, 1940.

Rehearing Denied May 8, 1940.

John C. North, of Corpus Christi, for appellant.

M. J. Baird, of Edinburg, for appellee.

MURRAY, Justice.

This suit was instituted by Guy B. Speed against the Refugio Refinery, a corporation, seeking to recover damages resulting to him personally and to his automobile, when his automobile collided with a truck owned by the defendant and operated by one of its employees.

The collision occurred on February 16, 1938, about 5:30 A. M., on U. S. Highway No. 281, in Jim Wells County, Texas, between the towns of Falfurrias and Alice, in fact, near the little town of Premont. Plaintiff and his wife were traveling north on the highway and the truck owned by the defendant was traveling south at the time of the collision.

The trial was to a jury who made the following findings, in response to the special issues submitted to them, to-wit:

1. Defendant's truck was not being operated, immediately prior to the collision, in whole or in part, upon the east half of the highway.

2. The lights on the defendant's Chevrolet truck, immediately before the collision in controversy and as the same approached the scene of the collision, were not dimmed, that this constituted negligence which was a proximate cause of the collision.

3. The collision was not the result of an unavoidable accident.

4. Plaintiff was not driving his automobile at an excessive speed.

5. The fact that the left front wheel of plaintiff's automobile was on the west side of the center of the highway at the time of the collision did not constitute negligence.

6. The plaintiff did not discover the danger of the collision and realize the peril of such in time, by the exercise of ordinary care and by the use of all the means at his command consistent with safety, to have avoided the collision, and, likewise, that the driver of defendant's truck did not make such discovery.

7. Plaintiff suffered personal injuries, proximately caused by the collision, in the sum of $2,800.

8. The value of plaintiff's automobile immediately before the collision was $300, and immediately after the collision, $75.

Judgment was entered in Speed's favor in the sum of $3,025, and the Refugio Refinery has prosecuted this appeal.

It is apparent that the only negligence of which the driver of the truck stands convicted is that of failure to dim his lights, and this in the face of the finding that the truck-driver did not discover the peril of the plaintiff in time to have done so. There is no allegation or finding that the lights on the truck were unduly bright, or that they were lights other than those which the law requires a truck to have burning while traveling on the highway. There is no law which requires a truck, or other automobile, to be equipped with a dimmer, nor is there any law which requires a driver to dim his lights. There is no suggestion here that the driver of the truck knew, or by the exercise of diligence should have known, that Speed was blinded by the lights from the truck. The jury found, in effect, that the driver of the truck stayed on his own proper side of the highway, but that appellee crossed the center of the highway and struck appellant's truck while on his left-hand side of the highway. Under such circumstances the evidence is insufficient to show that the driver of the truck was guilty of negligence in not dimming his lights.

Furthermore, appellee was guilty of contributory negligence proximately causing the collision as a matter of law. Appellee testified that he could at all times see the right-hand edge of the pavement, and this being true he should have stayed on his own right side of the highway, in which event no collision would have occurred.

On the other hand, if the lights were so blinding that he could not see even on which side of the highway the truck was traveling, then it was his duty to stop. Appellee testified that the highway was straight, that he saw the truck some distance before he met it, that he was blinded by the lights from the truck. He first thought that the truck had stopped on the wrong side of the road. He also saw a post near the truck, which marked the approach to a bridge, and he did not think that he could pass between the post and the truck. He pulled first to the left and then back to the right. During this time he was driving about twenty-five miles per hour.

In Carlson v. Johnke, 57 S.D. 544, 234 N.W. 25, 72 A.L.R. 1352, a reversal was granted because the trial court refused to give the following instruction to the jury, to-wit:

"It is not enough that a driver be able to begin to stop within the range of his vision, or that he use diligence to stop after discerning an object. The rule makes no allowance for delay in action. He must, on peril of legal negligence, so drive that he can and will discover an object, perform the manual acts necessary to stop, and bring the car to a complete halt within such range. If blinded by the lights of another car so he cannot see the required distance ahead, he must, within such distance from the point of blinding, bring the car to such control that he can stop immediately, and if he cannot then see, shall stop.

"A prudent person would reasonably have anticipated that the lights might interfere with his view ahead. When cars meet at night, each driver must anticipate the possibility of interference with his vision by the headlights of the approaching car, and, if he cannot see the road beyond such car, must have his own automobile under such control which will enable him to stop immediately, or within such distance as he can at all times see ahead."

In Blashfield's Cyclopedia of Automobile Law and Practice, Vol. 3, Permanent Edition, p. 427, the following note is found: "If the motorist seeks to avoid the charge of negligence on the ground that he is unable to know whether the street car has stopped to accommodate passengers, because of the glare of the light on the street car, or for other reasons, the reply is that he must not recklessly proceed upon his way under circumstances of doubt; he must know or, failing to know, should bring his car to a stop as in cases where his vision is blinded by a glare. House v. Ryder, 129 Me. 135, 150 A. 487."

In the case of Fulker v. Pickus, 59 S. D. 507, 241 N.W. 321, 323, it is said: "A careful review of all the evidence and according the respondent's own version and viewing his testimony in the most favorable light in which he states that he was blinded by a headlight and thereafter permitting his car to proceed at a speed to what he thought was a safe rate of speed when a moment before he was driving from twenty-five to thirty miles an hour while the light blinded him and continuing to drive after suffering the blinding effects for some 150 to 200 feet until he struck the tractor, made him guilty of contributory negligence as a matter of law. The respondent should have done all he could to avoid the injury to himself and property by slowing down or bringing his car to a stop. It may be inferred that he was conscious of the danger, but even so he did not stop, but moved ahead, and, not only straight ahead, but to the left and across the center of the highway over in front of and in the path over which the appellants were traveling. The collision took place with the on-coming tractor on the west third of the highway. Had the respondent stopped or had he driven straight ahead on his own side of the highway, no collision would have taken place. We must therefore say that as a matter of law his conduct was such, that is, his care and prudence does not conform to the required legal standard to be observed by an operator of a motorcar."

■ The case seems to be fully developed, therefore, the judgment will be reversed and judgment here rendered that the plaintiff take nothing and pay all costs.

Reversed and rendered.