KING, Respondent, v. FARMERS EDUCATIONAL & COOPERATIVE OIL CO., Appellant

(33 N. W.2d 333.)

(File No. 8955. Opinion filed July 14, 1948.)

**Cherry, Braithwaite & Cadwell,** of Sioux Falls, for Defendant and Appellant.

**Davenport, Evans & Hurwitz** and **Deming Smith,** all of Sioux Falls, for Plaintiff and Respondent.

SMITH, J. The plaintiff recovered a judgment for damages suffered in a collision of its oil transport with an oil transport of defendant. The appeal presents for review the refusal of the trial court either to grant defendant's motion for a directed verdict, or its motion for judgment n. o. v. predicated upon the theory that plaintiff was guilty of contributory negligence as a matter of law either because its employee drove its transport at a speed which prevented him from stopping within the range of his vision, or because its driver failed to act with ordinary care and prudence after he discovered defendant's transport blocking the way.

██ the pertinent standard of conduct to which a driver must conform under peril of being held guilty of negligence or contributory negligence as a matter of law was last declared in Pfleger v. Wilhelm, 65 S. D. 464, 466, 274 N. W. 872, 873 in words as follows:

"In the exercise of due care, one must at all times see, or know from having seen, that the road is clear or apparently clear, and safe for travel, a sufficient distance ahead to make it apparently safe to advance at the speed employed."

Similar pronouncements appear in Fulker v. Pickus, 59 S. D. 507, 241 N. W. 321; Taecker v. Pickus, 58 S. D. 177, 235 N. W. 504; Carlson v. Johnke, 57 S. D. 544, 234 N. W. 25, 72 A. L. R. 1352; and in Grosz v. Bone, 48 S. D. 65, 201 N. W. 871. In Carlson v. Johnke, this court approved the formulation of the rule by the Michigan court in Ruth v. Vroom, 245 Mich. 88, 222 N. W. 155, 156, 62 A. L. R. 1528, as follows:

"It is not enough that a driver be able to begin to stop within the range of his vision, or that he use diligence to stop after discerning an object. The rule makes no allowance for delay in action. He must, on peril of legal negligence, so drive that he can and will discover an object, perform the manual acts necessary to stop, and bring the car to a complete halt within such range. If blinded by the lights of another car so he cannot see the required distance ahead, he must, within such distance from the point of blinding, bring the car to such control that he can stop im-

mediately, and, if he cannot then see, shall stop. * * * A prudent person would reasonably have anticipated that the lights might interfere with his view ahead. When cars meet at night, each driver must anticipate the possibility of interference with his vision by the headlights of the approaching car, and, if he cannot see the road beyond such car, must have his own automobile under control which will enable him to stop immediately, or within such distance as he can at all times see ahead."

However, in 5 Am. Jur., page 648, § 263, it is written, "Without denying that in many situations and under many conditions a driver of an automobile is as a matter of law guilty of negligence in driving at such a rate of speed as prevents stopping within time to avoid an obstruction within the range of his vision, there is a strong tendency in the recent cases to refuse to adopt that as a universal formula or a hard and fast rule." Cf. Murphy v. Hawthorne, 117 Or. 319, 244 P. 79, 44 A. L. R. 1397; Morehouse v. City of Everett, 141 Wash. 399, 252 P. 157, 58 A. L. R. 1482; Morris v. Sells-Floto Circus, 4 Cir., 65 F.2d 782; Alabam Freight Lines v. Phoenix Bakery, 64 Ariz. 101, 166 P.2d 816; 23 Calif. L. Rev. 498; and 4 Rocky Mt. L. Rev. 231. Predicated upon these authorities the trial court concluded that in the circumstances described in the evidence the contributory negligence of plaintiff became an issue of fact for the jury. The defendant insists that the evidence fails to reveal a circumstance which either renders the rules quoted inapplicable or justifies the conduct of plaintiff. Viewed in the light most favorable to plaintiff the record establishes these facts: The collision occurred about 5 miles east of Menno, South Dakota, on a graded and gravelled east and west highway after midnight in February 1947. A truck headed east had become lodged with its righthand wheels in the snow in the south ditch. A service truck had arrived and had been placed immediately in front of the lodged truck and was attempting to pull it out. This service truck was on the south edge of the graded road, headed east. A third car had stopped more than 40 feet back of the lodged truck. It was headed east and was in the south half of the grade.

Thereupon the defendant's oil transport, made up 'of a tractor and trailer tank, arrived from the east and stopped on the north edge of the grade. The rear of its tank was about opposite the stalled truck. Almost immediately another car arrived from the west. It moved around the car farthest west and stopped in the south lane of travel just behind the lodged truck and opposite the front end of defendant's oil transport. Its driver had determined that the space between the defendant's transport to the north and the south was insufficient to afford him clearance. Thus a road block had been formed by the four eastbound vehicles in irregular line along the south side of the grade, and defendant's westbound oil transport which occupied about the north 10 feet of the grade.

The rear of defendant's transport was equipped with two reflectors, a tail light and seven other red lights, three of which were in the center at the top, and four of which were along a line just above the bumper. The reflectors were in the neighborhood of the bumper. A witness for plaintiff and the defendant's driver testified that the lights on defendant's transport were lighted. At least three and possibly all four of the cars along the south had their headlights lighted. It is not clear whether they were all on high or low beam.

The weather was cold. At the scene of the accident strips of fog were drifting across the road from north to south. This was described as a variable lifting and lowering fog. It did not come closer than five feet from the ground.

The road was described as a gravelled road. In fact, it had been an oiled road which had been broken up and made over into a rough gravelled road. The snow had been pushed into the ditch, but ice had formed to some extent under the gravel surface.

As the road block was forming plaintiff's oil transport, made up of a tractor and trailer tank, was coming from the east. It was fully loaded and weighed over-all about nineteen tons. It was equipped with vacuum brakes on the trailer and on the rear wheels of the tractor, and hydraulic

brakes on the front wheels of the tractor, all of which were in good operating condition. A control at the wheel permitted the driver to apply the trailer vacuum brakes without applying the brakes of the tractor. Another control, called a synchronizer, applied all of the brakes automatically in sequence, the trailer brakes first and then the tractor brakes. The purpose of this device was to avoid "jack-knifing" the tractor and trailer. The driver stated that the synchronizer control was used in bringing the transport to a stop on a straightaway. The lighting equipment of the transport included headlights and fog lights.

The driver of plaintiff's transport first saw what turned out to be some of the lights of the vehicles assembled at the road block as he came to the top of Hellwig hill about a mile east of the point of collision. From the top of that hill the general slope of the road is to the west, and a view is afforded of the entire valley toward Menno. At this point the driver first noted the drifting strips of fog ahead. Thereupon he placed his headlights on low beam and switched on his fog lights. So lighted he had a range of vision of 150 feet. He was then traveling 35 to 40 miles and hour and just let the transport roll down the hill. The road carried down around a curve across a little bridge. At this point the lights to the west were masked by a knoll, the crest of which was 150 yards east of the point of collision. As he came up over the knoll he saw what he judged to be the lights of two vehicles on the south side of the road. He thought they were either moving slowly or stopped. Thereupon he took his foot off from the accelerator. Because he was rolling down grade this reduced his speed very slightly. He estimated his reduced speed at 30 miles per hour. Anticipating possible interference of the headlights he was about to meet, he looked along the right-hand side of the road. At no time was he blinded by lights. The fog was at least five feet above the road and did not interfere with his driving vision. He never saw the lights on the rear of defendant's transport. He first saw the reflectors on the rear of that transport when 125 to 150 feet from it. He was then traveling 25 to 30 miles per hour. He immediately applied the

vacuum brakes on the trailer. When about 35 feet from defendant's transport, he turned to the left with a view of going between the transport and the vehicles to the south. He saw that if he could get through between the first vehicles he would collide with one farther back so he turned into the transport, applied all of his brakes and was traveling about 10 to 15 miles an hour when his right front wheels collided with the left rear side of defendant's transport. No other vehicle was struck, and the two transports came to rest with the tractor of plaintiff's transport shoved slightly under the left side of the defendant's trailer tank. No one was seriously hurt.

The driver of plaintiff's transport testified that when he applied the trailer vacuum brakes they did not seem to take hold right away and it did not seem to stop like it should, but he could not swear the wheels were sliding. He was not aware of the "sort of frozen surface" under the gravel until that time. No other witness who was asked about traction, including plaintiff's witnesses, experienced any difficulty with traction because of the described frozen surface under the gravel.

The driver of plaintiff's transport estimated he could stop that vehicle when traveling at 25 or 30 miles per hour at 125 feet or a little less by the use of all of its braking equipment. He expressed the opinion that he could have stopped "that night, if I knew everything was in the shape it was."

In urging that the circumstances confronting plaintiff's driver as he approached this road block were such as to justify his failure to conform to the standard of conduct fixed by our decisions cited supra, counsel state:

"He was driving on a gravel road and apparently had good traction, but did not realize that there was some ice and snow under the gravel surface which would affect his ability to bring his transport to a sudden stop. The night appeared to be clear, yet there was a variable fog and it is a reasonable inference that at times this fog lay at such height over the road that it would mask at least the top

portion of objects in the road ahead from Hespe's view, including the top of Defendant's trailer, which was 7 or 8 feet high. He was meeting a series of cars with headlights which did not blind him, but which would reduce his visibility somewhat, as is the experience of anyone who has driven a car at night. When he first saw the reflectors on the rear of the Defendant's parked transport, the space which he apparently had in which to pass to the left of this transport was deceptive. It appeared to him at first that he could drive his transport between the Defendant's transport and the first of the vihecles on the south side of the road, and for this reason he did not try to bring his transport to a sudden stop. He was confronted with an emergency, and the reasonable thing for him to do seemed to be to pass between the vehicles on the south of the road and the Defendant's transport on the north. It was after making this decision that the Plaintiff's driver realized that although he might get through the opening between the first of the vehicles on the south and the Defendant's transport, the Preheim car was nearer to the center of the road than the first of the approaching vehicles, and he probably could not make it between the Preheim car and the Defendant's transport. At this time he made the decision in the emergency to turn back and try to stop, but if a collision should be imminent, strike the parked transport rather than the passenger car. * * * We contend that this is a case where reasonable men might easily differ as to the conduct of the Plaintiff's driver, and a court should not attempt to determine his negligence as a matter of law."

The weakness in this argument is in the character of the circumstances on which it rests. The lights and the fog offered no appreciable intereference to the vision of plaintiff's driver according to his testimony. However, he had been aware of the fog and of the approaching lights for some distance. He had ample opportunity to adjust his speed to those circumstances. Further, there was nothing exceptional about the object with which the driver collided. It was discernible by the exercise of ordinary care in observing the way ahead. Even if the testimony of plaintiff's witness

that the rear of defendant's transport was lighted be ignored, and plaintiff be given the benefit of his own negative testimony that he did not see any lights and, therefore, it be found that the transport's tail and clearance lights were darkened, the fact remains that it was a bulky object equipped with reflectors. And it was discovered within a distance equal to the extreme range of the vision of the driver. We discern no reason for creating an exception to the quoted rule predicated on such circumstances.

The circumstances that, unknown to the driver of plaintiff's transport, there was a formation of ice under the gravel surface would occasion us greater concern if it had been one of the operative facts leading up to the event. However, the testimony of plaintiff's driver makes it certain that this ice formation was not a contributing cause to the result. It is true the driver testified that when he applied his trailer vacuum brakes, upon discovery of defendant's transport, they did not seem to be as effective as usual. However, he made it very clear that this interference did not prevent him from stopping in time to avoid the collision, because after the event and while giving his testimony in the case, he was still of the opinion that he could have stopped his transport and have avoided the collision if he had applied all of his braking equipment at once. In other words, if he had stepped on the described synchronizer as soon as he discovered defendant's transport, it is the opinion of the plaintiff's driver that he could have come to a timely stop. But he did not attempt to stop at the outset. All he did was to slow his pace by applying the vacuums on his trailer. He did not apply all of his brakes until after he was within 35 feet of the obstruction. The evidence fails utterly to offer room for an inference that the unanticipated discovery of some character of icy formation under the gravel had the slightest influence upon the succeeding events. A basis in reason for excusing the driver for not avoiding the collision is not offered by this circumstance.

■ The standard of conduct with which we are dealing looks toward such exercise of control of a motor vehicle as will make it possible for a driver to stop in time to avoid

harm to persons or property. It is pointless unless it embraces a requirement that the driver bring his vehicle to a stop or take other reasonable steps to avoid collision upon discovering the danger. Plaintiff's driver did not try to stop. Further than that, he took no other reasonable precautions to avoid the collision. Counsel faintly argues that it first appeared to the driver that he could avoid the threatened collision by passing between defendant's transport and the vehicles to the south. According to the testimony of the driver this was a thought which came after the die had been cast and he was 35 feet from the crash. Even if it had come earlier, reasonable minds acting reasonably could not say that to attempt to drive this nineteen-ton load of inflammable material between the defendant's transport and the vehicles to the south on this 22-foot roadway with which plaintiff's driver was thoroughly familiar would be an act of ordinary prudence. The circumstances which confronted plaintiff's driver when he discovered the transport of defendant obstructing his way commanded him to stop. In failing to stop he failed to conform to the quoted rule of safety fixed by the decisions of this court.

The testimony of plaintiff's driver does not indicate that he was confronted with an emergency. He discovered the obstruction of the way within the extreme range of his vision and he admits that if he had acted he could have stopped. If his estimates of speed, distance and ability to stop are inaccurate and he found himself in a situation which made stopping impossible, that situation resulted from his negligence in maintaining control, and his employer cannot claim the benefit of the emergency rule. Stacey v. Patzloff, 67 S. D. 503, 295 N. W. 287 and Campbell v. Jackson, 65 S. D. 154, 272 N. W. 293.

We are persuaded that to hold such circumstances as are revealed by this record to be exceptional and therefore sufficient to create a jury question on the issue of contributory negligence would empty the rule of safety, to which we have adverted, of all force and value.

In our opinion the trial court was in error in denying

the motion for a directed verdict for defendant and in failing to enter a judgment n. o. v.

The judgment of the trial court is reversed.

ROBERTS, P.J., and RUDOLPH, and HAYES, JJ., concur.

SICKEL, J., dissents.

SICKEL, J. (dissenting). The question in this case is whether plaintiff's driver was guilty of contributory negligence as a matter of law, or whether his negligence was a question of fact for the jury.

The opinion in this case is based on the so-called "rule of safety" adopted from the State of Michigan and heretofore applied by this court in a number of cases. The rule stated by the Michigan court is that "it is negligence as a matter of law to drive an automobile at night at such speed that it cannot be stopped within a distance that objects can be seen ahead of it." Ruth v. Vroom, 245 Mich. 88, 222 N. W. 155, 62 A. L. R. 1528. Since that decision the rule has been modified by the Supreme Court of Michigan. That court has more recently held that the driver "must see such obstruction as a careful person would have seen." That "it would convert a rule of safety into a rule of danger to hold that drivers" subject to distractions must anticipate, at their peril, unusual hazards on the highway; that when such hazards occur the "rule of safety" is not applicable but the question of the driver's negligence becomes an issue of fact under the circumstances. Garrison v. City of Detroit, 270 Mich. 237, 258 N. W. 259.

The question was again before the Supreme Court of Michigan in Bard v. Baker, 283, Mich. 337, 278 N. W. 88, 90. In that case the Michigan court reviewed Ruth v. Vroom, supra, and other Michigan cases in which the "rule of safety" was applied by that court, and said, "Our court, in placing a reasonable construction upon this statute, has held that a person should not be guilty of contributory negligence as a matter of law in failing to see an object which was undiscernable to a person approaching the same in the exercise of ordinary care."

Another Michigan case is Park v. Gaudio, 286 Mich. 133, 281 N. W. 565, 567, where the facts were strikingly similar to the facts in this case. The Michigan court sustained the verdict of the jury in favor of plaintiff, saying: "There was an issue of fact as to whether the driver of plaintiff's car was guilty of contributory negligence."

It has long been a well recognized rule of law that a motorist has a right to assume that others will obey the law · until he knows, or in the exercise of reasonable care, should know otherwise. He had a right to assume that there was no undisclosed hazard such as unlighted trucks standing in the path of travel blocking the way. Bard v. Baker, 283 Mich. 337, 278 N. W. 88; Central States Electric Co. v. McVay, 232 Iowa 469, 5 N. W.2d 817; Kadlec v. Al. Johnson Const. Co., 217 Iowa 299, 252 N. W. 103.

The evidence shows that plaintiff's driver was driving his transport truck west on U. S. Highway No. 18 at night. As he proceeded westward he passed over a knoll and at that time saw the headlights of two vehicles about 150 yards away, standing on the south side of the road facing east. The first one was a tow truck and the second was a service truck. Behind these two trucks was the Preheim car also facing east, parked near the center of the road. Plaintiff's driver slackened his speed and proceeded cautiously along his own side of the highway with his fog lights turned on and headlights on low beam. He could see the road ahead for a distance of about 150 feet. Plaintiff's driver kept his course by watching and following the right edge of the traveled portion of the highway. During that time defendant's transport truck was also standing on the north side of the road headed west. The rear end of it was opposite the service truck and was entirely west of and behind the headlights of the tow truck. The driver of defendant's truck had put out no flares, and the evidence is sufficient to justify the jury in finding that defendant's truck was without lights. Plaintiff's driver's first warning of danger came when he saw his own lights reflected in the clearance lamps or tail lamps of defendant's truck, 125 to 150 feet away. Plaintiff's driver was then driving at 25 to 30 miles

per hour. He immediately applied his brakes, but they did not seem to take hold as they should. It is a fair inference from the record that this failure was due to a frozen surface under the gravel, which condition was unknown to plaintiff's driver and of which he had no warning. It appears that plaintiff's driver could have stopped his car and avoided the collision had he known in time that defendant's truck was parked so as to block the highway. It also appears that after discovering defendant's truck plaintiff's driver could have stopped in time to avoid the collision had the brakes on his car held as they normally would have done. Realizing the danger of the collision plaintiff's driver attempted to pass between the cars on the south side of the road and defendant's truck, but found this passage blocked by the Preheim car. In this situation the plaintiff's driver directed his car against and struck the east rear end of defendant's truck. Plaintiff's speed at the time the collision occurred was 10 or 15 miles per hour.

In my opinion plaintiff's driver had the right to continue on his way until, in the exercise of reasonable care, he knew or should have known. that the road was blocked by defendant's unlighted truck. He did not know that the road was so blocked until the headlights of his car were reflected in the tail lamps of defendant's truck. Then plaintiff's driver was "caught in a mesh" where the ordinary safeguards failed him and the question of his contributory negligence in failing to avoid a collision was an issue of fact for the jury. Pokora v. Wabash R. Co., 292 U. S. 98, 104, 54 S. Ct. 580, 582, 78 L. Ed. 1149, 1154, 91 A. L. R. 1049; Mattfield v. Nester, 226 Minn. 106, 32 N. W.2d 291.