CARLSON, Respondent, v. JOHNKE, et al, Appellants.

(234 N. W. 25.)

(File No. 6966. Opinion filed January 3, 1931.)

*Theodore R. Johnson,* of Sioux Falls, for Appellants.
*Alan Bogue,* of Parker, for Respondent.

MISER, C. Plaintiff was driving his automobile south from Lennox on the graveled highway on the evening of September 11, 1928, between 8:30 and 9 o'clock. He collided with defendants' threshing outfit, which they were moving north. For his damages, he recovered verdict, and defendants appeal.

█ The refusal of the trial court to give two instructions requested by defendant, based on the testimony of plaintiff, that his vision was temporarily impaired by the glare of the headlights of an approaching car just prior to the accident, is assigned as error. The requested instructions were as follows:

"It is not enough that a driver be able to begin to stop within the range of his vision, or that he use diligence to stop after discerning an object. The rule makes no allowance for delay in action. He must, on peril of legal negligence, so drive that he can and will discover an object, perform the manual acts necessary to stop, and bring the car to a complete halt within such range. If blinded by the lights of another car so he cannot see the required distance ahead, he must, within such distance from the point of blinding, bring the car to such control that he can stop immediately, and if he cannot then see, shall stop."

"A prudent person would reasonably have anticipated that the lights might interfere with his view ahead. When cars meet at night, each driver must anticipate the possibility of interference with his vision by the headlights of the approaching car, and, if he cannot see the road beyond such car, must have his own automobile under such control which will enable him to stop immediately, or within such distance as he can at all times see ahead."

The language of these instructions was taken verbatim from the opinion of the Supreme Court in Ruth v. Vroom, 245 Mich. 88, 222 N. W. 155, 62 A. L. R. 1528. The rule there stated is supported by many decisions. Other courts have refused to adopt that rule and hold that the question of the driver's negligence is one of fact to be determined by the jury. Berry, Auto. (6th Ed.) § 186, p. 155; Huddy, Auto. (8th Ed.) p. 412; Jacobs v. Jacobs, 141 La. 272, 74 So. 992; L. R. A. 1917F, 253; Murphy v. Hawthorne, 117 Or. 319, 244 P. 79, 44 A. L. R. 1397, 1403-1407; Powell v. Schofield (Mo. App.) 15 S. W. (2d) 876.

In Grosz v. Bone, 48 S. D. 65, 201 N. W. 871, this court held that the driver of an automobile who, knowing that the highway on which he was driving was being resurfaced, ran into a pile of gravel after being blinded by the glaring of lights of an approaching car, was guilty of contributory negligence as a matter of law. That opinion quotes from and follows Budnick v. Peterson, 215 Mich. 678, 184 N. W. 493, which was followed by the Michigan court in Ruth v. Vroom, supra. Therefore the instructions requested by appellant stated the law of this jurisdiction, although their language might well be changed to make them more readily understandable. It is doubtful what some of the language therein, particularly "on peril of legal negligence," would mean to a jury of laymen.

But admitting the negligence of plaintiff, were defendants, appellants herein, entitled to prevail? Plaintiff was within a few miles of his home, traveling on the right-hand, or west, side of the road going south at a speed of over thirty miles an hour. It was a dark night. His lights lit up the highway twenty rods ahead of his car. Defendants, appellants herein, saw plaintiff's car coming for several miles before the collision. They were hauling a separator north along the highway with a fifteen-ton steam engine, moving about three miles an hour. There were no lights on engine or separator. From the outside of one large drive wheel to the outside of the opposite drive wheel was ten feet six inches. The graveled highway was twenty-three or twenty-five feet wide. After the collision, traffic had ample room to pass on the gravel on the east side of the threshing outfit. According to defendants, it was eighteen feet from the east side of the road to the outside of the west wheel of the engine. This would place the engine in

the center of the highway. An employee of defendants testified that a car could pass on the west side of the engine and separator but would have to go slowly. Plaintiff testified that he could not have driven west of the engine without getting off the gravel. Another witness testified that the engine was entirely on the west side of the highway. Still another, that the west wheel of the engine was only a few feet from the west side of the gravel. There was evidence that the engine was largely on the wrong side of the road to be traveling north. Ahead of the engine, and lighting the way for it, was an automobile driven by one Jepp. Different witnesses give the distance of the Jepp car ahead of the engine as a little over a car length, thirty-five feet, at least two rods, between three and four rods, between twelve and fifteen rods, and about nine or ten rods. Jepp says his car was on the east side of the road when he saw plaintiff's car coming several miles away. That he was three or four rods ahead of the engine and defendant Johnke called to him to "drive ahead a little faster; that there was a car coming," and that he speeded up a little then. Plaintiff testified that the Jepp car was not on the east side of the road but was in the center of the road ahead of the engine and, just before meeting him, moved over to the east so slightly that plaintiff had to run into the loose gravel at the side of the road in passing the Jepp car.

The lights of the Jepp car blinded plaintiff temporarily. He says he was going less than twenty-five miles an hour while passing the Jepp car. Defendants' witnesses say he was going much faster. After he was fifteen feet past the Jepp car, he saw the engine about fifteen feet in front of him. There was no room to pass to the west of it nor to stop in front of it; so he tried to pass to the east of it. The engine was moving forward with the front wheels tilted somewhat to the right. The right front wheel of plaintiff's car struck the right front wheel of defendant's engine, knocking the engine wheel off the axle, dropping the front end to the boiler, wrecking plaintiff's car, and seriously injuring plaintiff.

 It seems to be conceded by many authors on the law of negligence that where defendant's conduct that occasioned the injury was wanton or where it indicates that degree of indifference to the rights of others which may be justly characterized as recklessness, the doctrine of contributory negligence as a defense has

no application. Shearman and Redfield, Negligence (6th Ed.) § 114a; Cooley, Torts (3d Ed.) vol. 2, p. 1442; 8 Minn. Law Rev., note p. 329, at p. 333; 20 R. C. L. 144, Negligence, § 118; 45 C. J. 981, 982; Huddy Auto (8th Ed.) § 480; Thompson Negligence (2d Ed.) vol. 1, p. 247, § 266. In Cieplinski v. Severn (Mass.) 168 N. E. 722, 723, decided in 1929, the Massachusetts court says:

"The current of decisions is that when the defendant's wrong is something more than mere negligence, that is, when it has the element of wilful, reckless and wanton misconduct, contributory negligence is not a defense."

The Massachusetts court, in a case frequently cited in support of the foregoing rule, says:

"It is equally true that one who willfully and wantonly, in reckless disregard of the rights of others, by a positive act or careless omission exposes another to death or grave bodily injury, is liable for the consequences, even if the other was guilty of negligence or other fault in connection with the causes which led to the injury. * * * The law is regardful of human life and personal safety, and, if one is grossly and wantonly reckless in exposing others to danger, it holds him to have intended the natural consequences of his act, and treats him as guilty of a willful and intentional wrong. * * * In these cases of personal injury there is a constructive intention as to the consequences, which, entering into the willful, intentional act, the law imputes to the offender, and in this way a charge which would otherwise be mere negligence becomes, by reason of a reckless disregard of probable consequences, a willful wrong. That this constructive intention to do an injury in such cases will be imputed in the absence of an actual intent to harm a particular person is recognized as an elementary principle in criminal law. It is also recognized in civil actions for recklessly and wantonly injuring others by carelessness." Aiken v. Holyoke St. Ry. Co., 184 Mass. 269-271, 68 N. E. 238, 239.

In Bjornquist v. Boston R. Co., 185 Mass. 130-134, 70 N. E. 53, 55, 102 Am. St. Rep. 332, that court further defined wantonness and reckless negligence thus:

"[It] includes something more than ordinary inadvertence. In its essence, it is like a willful, intentional wrong. It is illustrated by an act which otherwise might be unobjectionable, but which is liable or likely to do great harm, and which is done in a wanton and reckless disregard of the probable injurious consequences."

In Thompson on Negligence (2d. Ed.) § 207, it is stated:

"Unless an act is done or omitted to be done, under circumstances and conditions known to the person, that his conduct is likely to or probably will, result in injury, and, through reckless indifference to consequences, he consciously and intentionally does a wrongful act, or omits an act, the injury cannot be said to be wantonly inflicted."

The New Jersey court defines it thus:

"To establish a willful or wanton injury it is necessary to show that one with knowledge of existing conditions, and conscious from such knowledge that injury will likely or probably result from his conduct, and with reckless indifference to the consequences, consciously and intentionally does some wrongful act or omits to discharge some duty which produces the injurious result." Staub v. Public Service Ry. Co., 97 N. J. Law, 300, 117 A. 48, 49.

To quote further in definition of recklessness or wantonness as distinguished from negligence would unduly extend this opinion. However, the language of Mr. Justice Holmes in Commonwealth v. Pierce, 138 Mass. 165, 175, 52 Am. Rep. 264, and of section 1286 of Babbitt Motor Vehicles (3d Ed.), is exceptionally good in defining that which is difficult of definition.

■■ The manifestations of reckless or wanton conduct are numerous and variant. Fortunately, we are neither called upon to add to the definitions heretofore quoted nor to adopt a fixed standard as to what shall or shall not constitute a reckless or wanton disregard of the safety of others. In the case at bar there was, of course, no distinct intention on the part of appellants to produce the damage to respondent which actually followed. However, appellants did see respondent's car coming for a distance of at least two miles. They were moving their engine forward at the rate of three miles per hour or sixteen rods per minute. If, as one of appellants stated to a witness for respondent just after the accident, respondent's car was coming "like a bat out of hell," and weaving from side to side, and, as one of appellants himself testified, respondent's car took only one and one-half minutes to cover that two miles, they had twenty-four rods of forward movement in which to have gotten their engine to their own side of the road, thereby giving respondent room to pass on his right side of the road. If, on the other hand, respondent was driving 30 miles per

hour until he slowed up to pass the Jepp car, as he testified, appellants had four minutes, or a forward movement of sixty-four rods, in which to give respondent his right side of the highway. While not holding that one violating the law of the road is, by that fact, guilty of recklessness or wantonness, in determining whether or not appellant's conduct was reckless or wanton it is to be taken into consideration that section 8632, Rev. Code 1919, requires travelers by vehicle, who meet on the road, to pass to the right of the middle of the traveled part of the road so that the respective vehicles may pass each other without interference, and that section 8633 not only makes one who offends against section 8632 liable in damages for all injuries sustained by reason of such offense, but also makes it a misdemeanor to offend against the provisions of that section. 45 C. J. 678; Balsewicz v. Chicago, etc., R. Co., 240 Ill. 238, 88 N. E. 734; Fry v. Southern Public Utilities Co., 183 N. C. 281, 111 S. E. 354; Pinoza v. Northern Chair Co., 152 Wis. 473, 140 N. W. 84.

Here was a steam engine, ten feet, six inches wide, without warning lights, in the middle or wrong side of the highway, masked by a car with blinding lights, either in the middle or on the right side of the road. Appellants observed plaintiff coming down the road for two miles; they realized that they must get their engine on their own side of the road; yet they moved forward the car with the blinding lights on the east side of the road, and the obstruction on the west side of the road to meet him. It is true that appellants had called to Jepp to drive forward in order that they could give respondent room to pass, and that they were even then moving over. Certainly, however, their efforts to remove that dangerous agency from the west side of the highway were characterized by greater deliberation than any ordinary care for the safety of the driver of the on-coming car would have demanded. They watched respondent come those two miles, either one and one-half minutes while his car weaved from side to side, or for four minutes at a more moderate speed, or for some intermediate time at some intermediate speed—the testimony of some of appellants' witnesses was that he was driving thirty-five or forty miles an hour. Yet when he arrived he was met by a car with blinding lights, either in the middle or the east side of the road, and a fifteen-ton engine, largely on the west side. It was a dark night with rain falling. Even if there was room for respondent to pass

slowly to the west of the engine, it did not so appear to respondent. Moreover, the testimony most favorable to appellants shows that they could have moved their engine seven feet six inches further to the east and yet been on the level gravel road. If respondent, who knew nothing of the engine being moved up on the west side of the road, should have reasonably anticipated the encountering of such an obstruction while blinded by the lights of the Jepp car, appellants, who were directing the movements of the Jepp car as well as their own engine, should no less have anticipated the peril of respondent. If respondent was negligent as a matter of law in driving past the Jepp car while blinded by its lights—and we are of the opinion that he was so negligent—nevertheless we think it is equally true that appellants were guilty of reckless or wanton conduct, as a matter of law, in moving forward this fifteen-ton engine on the wrong side of the highway, preceded and flanked by a car with blinding lights, and, with consciousness of probable results and indifference to consequences, making no effort whatever to prevent respondent from driving into what almost proved to be a death trap. The refusal to give the instructions requested was therefore not prejudicial to appellants, and, because there is no claim that the damages allowed by the jury were excessive, the judgment and order denying a motion for a new trial must be, and they are, affirmed.

POLLEY, SHERWOOD, CAMPBELL, and BURCH, JJ., concur.

BROWN, P. J., concurs in result.