CREAGER, Respondent v. AL'S CONSTRUCTION COM-
PANY et al., Appellants

(68 N. W.2d 484)

(File No. 9432. Opinion filed February 2, 1955)

Rehearing denied March 8, 1955

**Morrison & Skaug,** Mobridge, and **H. F. Fellows,** Rapid City, for Plaintiff and Respondent.

**Martens, Goldsmith & May,** Pierre, and **Davenport, Evans, Hurwitz & Smith,** Sioux Falls, for Defendants and Appellants.

BAKEWELL, Circuit Judge. This action arising from a collision between plaintiff's automobile and defendant's truck resulted in a verdict and judgment for the plaintiff. The case was submitted to the jury under SDC Supp. 47.-0304-1 our comparative negligence statute. The question presented by the appeal is whether the plaintiff was guilty of more than slight contributory negligence as a matter of law.

The facts in this case viewed in the light most favorable to the plaintiff disclose that in the afternoon of February 1, 1952, the defendant, Al's Construction Company, dispatched a wheeled platform drawn by a tractor, and commonly known as a "tractor-lowboy", to the business place of Lawrence Creager in Fort Pierre. The tractor-lowboy was driven by the defendant, Delbert Spoonemore, an employee of the defendant, Al's Construction Company. The purpose of the trip was to obtain and transport a certain caterpillar type tractor belonging to Lawrence Creager to a point on U.S. Highway 14 nine miles east of Pierre known as the "Garber Corner" where one Martell, an employee of Lawrence Creager, was to operate it in removing snow from a county highway. Spoonemore loaded the tractor on the lowboy in the

Lawrence Creager yard at about 5:30 p.m. The plaintiff, who is the father of Lawrence Creager, was a part-time employee of his son. At the time of Spoonemore's arrival at the Creager establishment, the plaintiff and Tom Martell had just finished some mechanical work on the tractor and were present when it was loaded and saw it, mounted on the tractor-lowboy, leave the Creager establishment between 5:30 and 6:00 p.m.

At the time of loading, it was agreed that Spoonemore was to directly proceed to the Garber Corner and that the plaintiff was to follow behind with Martell who was to operate the tractor.

Following the loading, the defendant, Spoonemore, proceeded directly to the Garber Corner and parked the tractor-lowboy about 150 feet east of the intersection of Highway 14 with the north-south road which led north to the Garber house. There were snowbanks three or four feet high on both sides of Highway 14, but the road itself was clear of ice and snow. The tractor-lowboy was drawn up against the snowbank at the south edge of the highway leaving from 18 to 20 feet of open roadway to the north of it. There is testimony that prior to the collision there were lights showing to the rear of the truck and headlights on low beam on the front of it, but the evidence is sufficient to justify a jury finding that no lights were visible from the rear of the tractor-lowboy at the time of the collision. There were no flares placed on the highway. It was dark when the plaintiff left Pierre about twenty minutes after Spoonemore's departure with the tractor-lowboy. He was driving his pickup truck with Martell in the seat beside him. He had stopped at Martell's residence in Pierre long enough to enable the latter to obtain some warmer clothing. As the plaintiff, proceeding east on U.S. Highway 14, approached the Garber Corner, he was driving at a speed of from 30 to 35 miles per hour; the road was level; there were no physical obstructions to his view ahead; there was no car approaching from the east, no lights from cars or otherwise to interfere with or limit his vision ahead. His headlights were on high beam and he testified that he could see a distance of 200 feet ahead of his car; his windshield was clear as was the atmosphere—the

plaintiff described it as a "fine night". The plaintiff knew the location of the Garber Corner to be approximately nine miles east of Pierre and before the collision occurred he knew, from having seen the lights in Garber's farmyard about a mile to the north of the intersection, that he was closely approaching the Garber Corner. He knew, from his previous arrangement with Spoonemore that the tractor-lowboy would be stopped in the near vicinity of that corner and that unless Spoonemore found it possible to enter the north-south intersecting highway at that corner, it would be stopped on U. S. Highway 14 at or close to the corner. Plaintiff knew from having seen that the snow which had been removed from Highway 14 was piled on the north and south shoulders of that highway to a height of from three to four feet, and that this piled snow might possibly extend across the north-south road at the intersection; he knew that the purpose of taking the caterpillar tractor to that corner was to remove snow from the north-south road; he knew the length of the tractor-lowboy to be 45 feet and he was familiar with the type, color, height and weight of the tractor-lowboy combination, and the hazard to traffic which would result from an unsuccessful attempt by Spoonemore to turn from the highway into the side road; he knew that the tractor-lowboy was dark in color and that the tractor mounted on the lowboy, although yellow or orange in color, was spotted with mud, and with 500 pounds of mud thereon. In this state of fact, plaintiff drove past the corner a distance of 150 feet without seeing the tractor-lowboy until the second he collided with it.

■ ■ The negligence of the defendants in permitting the tractor-lowboy to stand on the highway without any rear lights or reflectors as required by SDC 44.0352, and without placing flares as required by SDC 44.0354, is clearly established. King v. Farmers Educational & Cooperative Oil Co., 72 S.D. 280, 33 N.W.2d 333; Winburn v. Vander Vorst, 75 S.D. 111, 59 N.W.2d 819. Under our comparative negligence statute, SDC Supp. 47.0304-1, it follows that if, in failing to observe the tractor-lowboy as it stood unlighted on the highway, the plaintiff was not guilty of negligence more than slight, the verdict of the jury must stand.

As construed by this Court in Friese v. Gulbrandson, 69 S.D. 179, 8 N.W.2d 438, 442, our legislature made use of the words "slight negligence" to describe a quantum of want of such ordinary care as a reasonable man would exercise under the circumstances. In that case it was said:

> "The legislative purpose is clearly revealed. It has not sought to uproot the doctrine of contributory negligence as it exists in our law. It has sought to benefit only a particular class of plaintiffs in negligence cases, and that a very limited class. Speaking in broad terms, it may be said that the object of the legislature is to render the rule of contributory negligence inapplicable if the contributory negligence of plaintiff is small in quantum, in cases in which it also appears by a process of comparison that the disparity between the quantum of defendant's negligence and that exhibited by plaintiff is extreme. * * * to bring a case within the rule of the statute, the contributory negligence of plaintiff must be no more than slight, and in addition, the negligence of defendant must be no less than gross or great in comparison with the slight or small contributory negligence of plaintiff."

The rule as laid down in Friese v. Gulbrandson was applied in Flanagan v. Slattery, 74 S.D. 92, 49 N.W.2d 27, 29; Roberts v. Brown, 72 S.D. 479, 36 N.W.2d 665; Will v. Marquette, 73 S.D. 192, 40 N.W.2d 396; Stone v. Hinsvark, 74 S.D. 625, 57 N.W.2d 669; Pleinis v. Wilson Storage & Transfer Co., 75 S.D. 397, 66 N.W.2d 68.

In Roberts v. Brown, supra [72 S.D. 479, 36 N.W.2d 668], the reference in our comparative negligence statute to the term "gross negligence" was clarified by the declaration:

> "The reference to gross negligence in the statute has no significance except in making the comparison between plaintiff's negligence, which the jury must find to be no more than slight, and the negligence of the defendant, which must be great or gross in comparison."

■ Where reasonable minds might draw different inferences or conclusions from facts proved, the matter in is-

sue must be submitted to the jury; but where undisputed facts are of such a nature that reasonable men could not differ as to whether exhibited conduct conforms to established conduct, the question is one of law for the Court. Kundert v. B. F. Goodrich Co., 70 S.D. 464, 18 N.W.2d 786; Ulrikson v. Chicago, M., St. P. & P. Ry. Co., 64 S.D. 476, 268 N.W. 369; Flanagan v. Slattery, supra.

If, on the record, considered separately from the negligence of the defendant, it may be said as a matter of law that the plaintiff's contributory negligence was more than slight, he cannot recover, and the necessity for submission of the defendant's negligence does not exist. If plaintiff was guilty of contributory negligence which in itself was more than slight, he cannot be permitted to recover. Will v. Marquette, 73 S.D. 192, 40 N.W.2d 396.

Where the evidence shows beyond reasonable dispute that the negligence of plaintiff is more than slight, the trial court must then instruct the jury to return a verdict for the defendant. Kundert v. B. F. Goodrich Co., supra.

The standard of conduct to which a motorist must conform under peril of being held guilty of negligence or contributory negligence as a matter of law was declared by this Court in Taecker v. Pickus, 58 S.D. 177, 235 N.W. 504, 506, in these words:

> "* * * in the exercise of due care, she must at all times see, or know from having before seen, that the road is clear, or apparently clear, and safe for travel, a sufficient distance ahead to make it apparently safe to advance at the speed employed. Where an accident may be avoided by looking, one is bound in the exercise of due care to look."

Similar statements appear in Pfleger v. Wilhelm, 65 S.D. 464, 466, 274 N.W. 872, 873; Grosz v. Bone, 48 S.D. 65, 201 N.W. 871; Carlson v. Johnke, 57 S.D. 544, 234 N.W. 25, 72 A.L.R. 1352; King v. Farmers Educational & Cooperative Oil Co., 72 S.D. 280, 33 N.W.2d 333; Stacey v. Patzloff, 67 S.D. 503, 295 N.W. 287; Kundert v. B. F. Goodrich Co., 70 S.D. 464, 18 N.W.2d 786; Jamieson v. Gerth, 61 S.D. 514, 249 N.W. 921; Descombaz v. Klock, 58 S.D. 173, 235 N.W. 502, 504.

In King v. Farmers Educational & Cooperative Oil Co., supra [72 S.D. 280, 33 N.W.2d 334], it was written:

"It is not enough that a driver be able to begin to stop within the range of his vision, or that he use diligence to stop after discerning an object. The rule makes no allowance for delay in action. He must, on peril of legal negligence, so drive that he can and will discover an object, perform the manual acts necessary to stop, and bring the car to a complete halt within such range."

In support of his contention that the question of whether his contributory negligence was more than slight was for the jury, respondent relies on Giles v. Welsh, 122 Neb. 164, 239 N.W. 813; Monasmith v. Cosden Oil Co., 124 Neb. 327, 246 N.W. 623; and Pierson v. Jensen, 150 Neb. 86, 33 N.W.2d 462. Also, Audiss v. Peter Kiewit Sons Co., 8 Cir., 190 F.2d 238. All of these Nebraska cases involve rear-end collisions with unlighted vehicles standing on the highway without warning of their presence, and Audiss v. Peter Kiewit Sons Co. considered a collision with a road-roller. All of them hold that because of certain specified conditions minimizing the visibility of the vehicle collided with, it was for the jury to decide whether plaintiff's negligence was more than slight. None of these decisions is authoritative here. In none of them did the plaintiff have the knowledge possessed by Creager of the close proximity of the parked vehicle collided with.

Respondent also urges that this appeal should be determined by Winburn v. Vander Vorst, 74 S.D. 531, 55 N.W. 2d 609; Id., 75 S.D. 111, 59 N.W.2d 819 and the principles announced therein. No principle is announced in either opinion of the cited authority which is applicable under the facts in this case.

In the Winburn case, as here, the plaintiff collided with the rear of a truck parked at night on the highway without lights, either front or rear, without reflectors on the rear end, and without flares. At some distance before coming up to the parked truck the plaintiff had dimmed his headlights as he met a car coming from the opposite direction, and, as another car was also approaching from the opposite direc-

tion, he left them on dim. He did nevertheless see the truck as an object on the highway from a distance of 200 to 300 feet to the rear of the truck and took his foot off the accelerator. At a distance of from 90 to 100 feet he recognized the object, which he had earlier seen, as being a truck and observed that it was not moving. He then applied his brakes, but not in time to avoid collision with the truck. On these facts, there is no similarity between the Winburn case and this one. Winburn did see the truck and from a distance of at least 200 feet notwithstanding his headlights were on low beam. The collision was due to his inability to stop within the range of his foreshortened vision after he was able to determine that the object was a truck and was not moving. In this case, Creager did not see the lowboy until the very second he collided with it, even though he had actual knowledge that he would find it in the immediate vicinity and was looking for it with his lights on high beam. It was these distracting circumstances which justified the submission of the Winburn case to the jury and which was held sufficient to warrant the jury in finding that plaintiff's contributory negligence was not more than slight under our contributory negligence statute .

But in this case there were no lights of any car approaching from the opposite direction and, so far as the evidence discloses, plaintiff's headlights would, under the favorable, clear atmospheric conditions prevailing that night and on the level road on which he was driving, have produced a driving light sufficient to render clearly discernible a person 200 feet ahead as is required of legal headlights by SDC 44.0355.

■ This statute is in effect a legislative declaration that, under normal atmospheric conditions and on a level road, motor vehicle headlights which conform thereto when on high beam furnish that amount of visibility. If, to one exercising due care, a person would be clearly visible at that distance regardless of the color of his clothing, this tractor-lowboy and the tractor mounted thereon with its overall height of about eight feet should have been visible, if not at 200 feet, at least at a lesser distance, and before the collision. Both Creager and Martell testified that they did not

see the tractor-lowboy until the very second they collided with it, but a motorist who previously overtook and passed it while driving at a speed of 80 miles per hour saw it in time to turn out and thus avoid a collision, although the lights of a car which one of its occupants testified was approaching from the opposite direction may to some extent have helped in disclosing its presence.

The question in this case is not the abstract one of whether a motorist without independent knowledge of the presence of an unlighted or otherwise inconspicuous vehicle on the road would be guilty of more than slight negligence in failing to discern it in time to avoid a collision with it. Here, the plaintiff knew from his pre-arrangement with Spoonemore that the lowboy would be standing in or immediately adjacent to the road intersection at the Garber Corner. He knew he had arrived at and passed that point and that the lowboy was not on the side road. With this knowledge, he nevertheless continued to drive beyond such intersection at a speed not less than 30 miles per hour, or 2,640 feet per minute, or 44 feet per second in search of a vehicle the appearance and visibility of which, or lack thereof, he was fully familiar with, which he had expected to find at a point already passed, and which he was not entitled to believe would be found at any considerable distance therefrom.

Clearly the plaintiff was guilty of contributory negligence more than slight and the trial Court should have directed a verdict for the defendants.

The judgment is reversed.

All the Judges concur.

BAKEWELL, Circuit Judge, sitting for ROBERTS, J., disqualified.