CRABB, Respondent v. WADE, Appellant

(167 N.W.2d 546)

(File No. 10568. Opinion filed April 30, 1969)

**Costello, Porter, Hill, Banks & Nelson,** Rapid City, for defendant and appellant.

**Whiting, Lynn, Freiberg & Shultz,** Rapid City, for plaintiff and respondent.

HANSON, Judge.

This Wrongful Death action followed a motor vehicle-pedestrian accident in which John A. Rippel was killed. Damages in the amount of $30,000 were sought and the jury awarded $20,000. On appeal defendant primarily contends decedent Rippel was guilty of contributory negligence more than slight as a matter of law.

Viewing the evidence in the light most favorable to plaintiff, it appears decedent Rippel was an airman stationed at the Ellsworth Air Force Base. He was 22 years of age, single, and an exceptionally bright, intelligent, and capable young man. About 9:00 in the evening of May 27, 1966 he was returning to the Base walking north on the right-hand side of the shoulder along the access road leading to the Main Gate. He was wearing suntan trousers and a green jacket. While so walking he was struck and killed by a hit and run driver.

There were eyewitnesses to the accident—Terrance Updegrove and Deanene Greer. Updegrove's father was in the Air Corps and lived near the Air Base. Terrance attended the University of Utah and was home on vacation. As this young couple approached the Air Base the same car passed them twice. After it passed the first time it turned off into the Commercial entrance to the Air Base, but shortly afterwards overtook and passed again. It was a 1962 or 1963 Chevy II black station wagon driven by a man. It was being driven fast, recklessly, and weaved back and forth. Terrance described the erratic manner in which the station wagon was being driven as "inconsistent * * * He would just stay on this side of the road, and then drive on the other side, and then back to the one side."

When the two cars reached the access road leading to the Main Gate of the Air Base, Updegrove was following 50 to 75 yards behind the station wagon. After the station wagon passed through the interstate underpass Updegrove saw ahead in the headlights of the station wagon what appeared to be a pedestrian walking "on the right-hand side of the shoulder." The station wagon drifted from the center of the road to the right until it appeared to hit the pedestrian. The station wagon continued on. Updegrove stopped and looked around, but could find nothing. Apparently Rippel's body was hidden in the darkened depression of the ditch from his headlights because it was discovered there the next morning. After searching and finding nothing, Updegrove reported to the air policeman on duty at the Air Base Gate the fact he had seen a black Chevy II station wagon driven in a reckless manner. An autopsy revealed Rippel received and died of multiple severe injuries.

Defendant Wade did not appear or testify at the trial, but admitted in his answer that a 1963 Chevy II black station wagon struck and caused Rippel's death as alleged in the complaint. He did not admit being the owner or operator. Proof of ownership was immaterial and the evidence leaves no doubt defendant was operating the station wagon and he was under the influence of intoxicating liquors at the time of the accident.

The evidence shows defendant consumed numerous beers, three or four shots of whiskey, a rum and coke, several vodkas and he purchased two six-packs of beer and two pints of whiskey during the day and evening immediately preceding the accident. He arrived at the trailer court near the Air Base where he lived about 9:00 in the evening driving a 1963 Chevy II black station wagon. He drove the wagon recklessly into the trailer court and had considerable difficulty parking in the driveway near his trailer. When he got out of the car he had to hang onto the top to maintain balance. An argument with his wife followed in which she told defendant "she was sick and tired of his drinking * * * and was going in the house to get the baseball bat". Defendant then drove off in the Chevy station wagon and returned in about half an hour. The wagon was

left parked near the Wade trailer house. The next morning investigation revealed damage to the right front side of the vehicle. There was a hole in the lower right-hand corner of the windshield, the antenna was broken, and the right front post was damaged.

At the time of the accident plaintiff's decedent was walking along the right-hand side of the highway in violation of the following statutory rule of safety:

> "Where sidewalks are not provided any pedestrian walking along or upon a highway shall, when practicable, walk only on the left side of the roadway or its shoulder facing traffic which may approach from the opposite direction". Ch. 151, Laws 1961.

Accordingly, the trial court instructed the jury this statute established the standard of care of an ordinarily careful and prudent person and violation constituted negligence as a matter of law. The issues of proximate cause and the comparative extent of decedent's contributory negligence were submitted to the jury. Defendant contends the court should have directed a verdict in his favor as decedent's negligence as a matter of law, was more than slight and a contributing cause of his death. Flanagan v. Slattery, 74 S.D. 92, 49 N.W.2d 27.

Our comparative negligence law was simplified by amendment in 1964 by (1) requiring the determination of plaintiff's "slight" contributory negligence to be made in direct comparison with the negligence of the defendant in each particular case rather than comparing it abstractly with the fictitious ideal, reasonable, prudent man as formerly required (see Dwyer v. Christensen, 76 S.D. 201, 75 N.W.2d 650, 56 A.L.R.2d 734), and (2) by eliminating the need of showing defendant's negligence "gross" in comparison. Our law now reads:

> "In all actions brought to recover damages for injuries to a person or to his property caused by the negligence of another, the fact that the plaintiff may have been guilty of contributory negligence shall not bar a

recovery when the contributory negligence of the plaintiff was slight in comparison with the negligence of the defendant but in such case, the damages shall be reduced in proportion to the amount of plaintiff's contributory negligence." Ch. 149, Laws 1964.

As pointed out in Nugent v. Quam, 82 S.D. 583, 152 N.W.2d 371, there can be no application of this law unless both parties are guilty of negligence proximately causing or contributing to the injuries complained of. The negligence of both parties must, therefore, be first considered and determined separately by the common standard of the reasonably prudent man. If the parties are both found to be causally negligent, the jury then determines if the contributory negligence of the plaintiff is slight in comparison with the negligence of the defendant.

The court indicated in Nugent the word "slight" means small in quantum in comparison with the negligence of the defendant. However, by eliminating the "gross" comparison feature and by requiring direct comparison of the parties' negligence the 1964 amendment to our comparative negligence act, in effect, enlarged or expanded the scope of the term "slight contributory negligence". It is now a relative and variable term which defies precise definition and prohibits an arbitrary mathematical ratio limitation. Broadly speaking, our comparative negligence act now applies whenever a plaintiff's contributory negligence is determined to be small in comparison with defendant's negligence. What constitutes "slight" or "small" contributory negligence naturally varies with the facts and circumstances in each case. The same conduct constituting slight or small contributory negligence in one case may be great in others when compared with the negligent acts of different defendants under different facts and circumstances.

After reviewing the evidence in Nugent the court concluded plaintiff's contributory negligence was more than slight as a matter of law as it equaled or nearly equaled the negligence or want of care exercised by defendant. The same equality of negligent conduct is not evident in the present case. De-

cedent's negligence in walking along the right-hand shoulder of the highway could be considered as a condition or as a remote contributing cause of the accident. It was a clear night, traffic was light, and decedent was visible to the operator of the car traveling 50 to 75 yards behind defendant's vehicle. He should have been clearly visible to defendant. His contributory negligence if found to be a proximate cause of the accident could certainly be characterized as slight or small in comparison to the careless, reckless, and drunken manner in which defendant was operating his motor vehicle in wanton disregard to other users of the highway. He weaved back and forth and drove on both sides of the highway. He failed to stop at the scene of the accident and was so intoxicated he could not remember the incident. Under the circumstances, the issues of proximate cause and the comparative extent of decedent's contributory negligence were properly submitted to and determined by the jury. As previously pointed out issues of this nature "become a matter of law only when the facts from which the inferences can be drawn admit of but one conclusion. This occurs rarely." Myers v. Quenzer, 79 S.D. 248, 110 N.W.2d 840.

Defendant asserts other errors occurring at the trial compel reversal. However, only one requires consideration. This concerns defendant's motion for a mistrial based upon a news item printed in the Rapid City Journal the first day of the trial. The short article appeared on page 3 of the paper captioned "Two Civil Suits Open In Court" advising that two civil suits were commenced Monday morning in Pennington County Circuit Court. With reference to the present action the article stated "The other suit was instituted against Sylvester Wade of Ellsworth Air Force Base by the estate of John A. Rippel, deceased. In October of 1966 Wade was convicted of second degree manslaughter. He was charged with hitting Rippel, a pedestrian with his car. Since his conviction Wade has been free awaiting an appeal of his case. The Rippel estate is asking $30,000 in the suit."

■ ■ Motions of this character are addressed to the sound discretion of the trial court. Jury trials cannot be isolated from

the community and conducted in vacuums free from all outside sources of news and information. It would be unrealistic and naive to assume the news item was the jurors' first and only source of information regarding defendant's prior conviction. See State v. McLaughlin, 250 Iowa 435, 94 N.W.2d 303.

During the trial of this action no mention or reference to defendant's prior criminal trial or conviction was made. His rights were further preserved and protected by the following rulings made during the course of trial:

1. Plaintiff was not allowed to call or examine defendant Wade or his wife as adverse witnesses unless they appeared and testified for the defense. Neither appeared nor testified.

2. During final argument to the jury plaintiff was not allowed to comment on failure of defendant and his wife to attend or testify.

3. The trial court refused to instruct upon the unfavorable inference arising from failure or refusal of a party to testify to material matters peculiarly within his knowledge.

4. The trial court gave the following cautionary instruction: "It is your duty as a jury to determine the facts and you must do this solely from the evidence that has been produced here in open court. This consists of the testimony of the witnesses and the exhibits which have been received in evidence. * * * AND YOU MUST NOT CONSIDER ANYTHING YOU MAY HAVE HEARD OR READ ABOUT THIS CASE OTHER THAN THE EVIDENCE WHICH HAS BEEN PROPERLY ADMITTED HEREIN." (emphasis added)

■ Under the circumstances, denial of defendant's motion for a mistrial was not an abuse of discretion. See State v. Waitman, 42 S.D. 5, 172 N.W. 504.

Affirmed.

BIEGELMEIER, P. J., and HOMEYER, J., concur.

ROBERTS, J., concurs in the affirmance of the judgment.

RENTTO, J., concurs specially.

RENTTO, Judge (concurring specially).

While I concur generally in the opinion I think it proper to observe that the 1964 amendment did not remove from our comparative negligence law the concept of the standard of care of the ordinarily reasonable and prudent man. This norm of conduct is still at the heart of our rule. Without it there would be no way in which the contributory negligence of the plaintiff could be determined to be slight, or otherwise, when compared with the negligence of the defendant.

This was well stated by Judge Burns in Nugent v. Quam, 82 S.D. 583, 152 N.W.2d 371, when he wrote:

"For this purpose it seems not only helpful but necessary to start with the standard of care of the ordinarily reasonable and prudent man, not used as an absolute standard of conduct for either one separately, but for a determination of the extent to which each fell below the standard for use in comparing the quantum of want of ordinary care exercised by the plaintiff with the quantum of want of ordinary care exercised by the defendant."

After "the extent to which each fell below the standard" is determined, the fact trier is then in a position to make the comparison required by the amendment. The manner of comparison is the principal change made by the amendment. This results from adding the requirement that the contributory negligence of the plaintiff be slight "in comparison with the negligence of the defendant."

I also feel it should be emphasized that the import and scope of the epithet "slight" in our rule remains as it was before the amendment. This is clear from our decision in the Nugent case. That plaintiff's contributory negligence was less in quantum than the defendant's negligence does not make it "slight in comparison thereto". More is required to warrant that characterization. To bring it within the range of that phrase it must be "small in amount or of little importance or insignificant or unsubstantial or inconsiderable" when compared to the negligence of the defendant.

Eliminating the gross comparison feature from our comparative negligence law altered the quantum of negligence required to hold the defendant liable. However, its removal from the statute, in my view, could not in any way affect the meaning of the phrase "slight contributory negligence". Before the amendment whether the contributory negligence was slight was determined by considering it by itself and separately from the negligence of the defendant. Creager v. Al's Construction Co., 75 S.D. 482, 68 N.W.2d 484. It was not compared with the gross negligence of the defendant then required to make him liable. Rather, it was compared with the conduct of the ordinarily reasonable and prudent man. In other words, under our law before the amendment defendant's gross negligence was not a factor in determining whether plaintiff's contributory negligence was slight.