COREY, Appellant v. KOCER et al., Respondents

(193 N.W.2d 589)

(File No. 10870. Opinion filed January 21, 1972)

L. E. Schreyer, and M. E. Miller, Lake Andes, for plaintiff and appellant.

L. L. Piersol, Sioux Falls, for defendants and respondents.

BIEGELMEIER, Judge.

Plaintiff, driver of an auto on a two-lane 25-foot road, collided with a self-propelled combine driven by defendant Weerheim and owned by defendant Kocer. Both vehicles were proceeding in the same direction.

To plaintiff's action for damages defendants asserted a counterclaim which the jury denied and returned a verdict for plaintiff on his claim. Defendants' motion for judgment n. o. v. was granted so far as plaintiff's judgment was concerned and this appeal followed.

The sole question is whether plaintiff was negligent and whether that negligence was the proximate cause of the accident so as to bar his claim for damages as a matter of law. The jury's finding of defendants' negligence is not, and cannot be, controverted under the evidence upon which the jury could and did base its verdict.

SDCL 32-22-2 makes it unlawful for any person to operate or move a combine on a public highway more than the 96-inch in width limit provided for in SDCL 32-22-3 between one-half hour after sunset and the following one-half hour before sunrise, which time period may be described herein as "dark time". It is undisputed the combine exceeded this limit, the evidence of defendants being it was from 122½ to 127½ inches wide or from two to two and one-half feet over the limit.

■ While there was some evidence on behalf of defendants that the accident occurred around dusk of November 8, 1967, plaintiff's evidence showed it was at least a half hour after sunset when specified "lighted front and rear lamps" were required by SDCL 32-17-4.[1] This and other evidence hereafter adverted to supports the jury's finding of defendants' negligence and its verdict on that issue.

■ Some mention of the proceedings in the trial court that led to the ruling complained of may be informative and show how it resulted. Defendants' motions for directed verdicts and for the judgment n. o. v. were based on their claim and argument that plaintiff was negligent as a matter of law which barred him from any recovery. At the hearing on the motion for judgment n. o. v. defendants urged, and in the briefs and argument on appeal repeat here, that as neither party requested and the court did not give an instruction based on our comparative negligence statute, SDCL 20-9-2, its principles were and are not applicable and any negligence of plaintiff bars his action. This is an erroneous view for on such motions in the trial court and here on appeal correct rules of law must be applied rather than the law as established by the trial court's instructions to the jury. Frager v. Tomlinson, 74 S.D. 607, 57 N.W.2d 618. Federal Land Bank v. Houck, 68 S.D. 449, 4 N.W.2d 213. Therefore, the trial court at that time and this court on appeal must apply the principles of our comparative negligence law to the motion and decision.

---

1. "Every vehicle upon a highway within this state during the period from a half hour after sunset to a half hour before sunrise * * * shall be equipped with lighted front and rear lamps as respectively required in §§ 32-17-1 to 32-17-26, inclusive, for different classes of vehicles * * *".

Defendants reiterate this contention on another point. SDCL 32-17-8, which plaintiff cited, requires every "motor vehicle * * * shall be equipped with at least one lighted rear lamp on the left thereof, not over fifty-two inches above the roadway". Defendants state this statute is not properly before the court for the reason the trial court by Instruction 10 advised the jury a combine must display a **white** light visible for 500 feet to the **rear** of the combine to which neither side objected and no instruction requiring a red light not over 52 inches above the roadway was requested or given so this became the "law of the case". Under the "correct rule" doctrine cited it did not. Defendants' Instruction 10 requiring a white light shining to the rear was based on SDCL 32-17-26, hereafter quoted, and their own evidence (similar to plaintiff's) showed the combine had such a rear white light.

In addition to not being the law of the case (on the motions involved), in our opinion Instruction 10 did not correctly interpret the lighting requirements of this combine during the "dark hours". SDCL 32-17-8 provides:

"Every motor vehicle * * * shall be equipped with at least one lighted rear lamp on the left thereof, not over fifty-two inches above the roadway on which it stands, exhibiting a red light plainly visible from a distance of five hundred feet to the rear, except farm vehicles which are being drawn at the end of a train of vehicles shall be equipped with two four-inch reflectors so as to exhibit a red light plainly visible from a distance of five hundred feet to the rear."

This section excepts only farm vehicles being drawn at the end of a train of vehicles, which was not defendants' situation. SDCL 32-17-26 then provides:

"All vehicles **not** required in §§ 32-17-1 to 32-17-25, inclusive, to be equipped with **specified lighted lamps** shall carry one or more lighted lamps or lanterns displaying a white light visible under normal atmospheric condi-

. tions from a distance of at least five hundred feet to the front and to the rear of such vehicle." (Emphasis supplied)

This last statute does not affect or modify SDCL 32-17-8 so far as this combine is concerned as the quoted SDCL 32-17-8 requires it to be "equipped with specified lighted lamps".

Another example of nonconformity to the correct rule of law is defendants' answer to plaintiff's contention that defendants were negligent for violating SDCL 32-22-2 by the operation in dark time of a combine exceeding the 96-inch width limit in SDCL 32-22-3. They assert aside from the exemption specifically granted (them) by SDCL 32-22-1, SDCL 32-22-3 also is not properly before the court because no instruction embodying SDCL 32-22-3 was either required or given. This claim fails for the same correct rule yardstick noted above.

Another safety statute, not mentioned in the briefs, that must be considered is SDCL 32-17-14 which requires every vehicle over 83 inches in width to be equipped with

"two lamps located at the extreme right and left sides of the rear of the vehicle and displaying red lights visible from a distance of five hundred feet to the rear * * * which * * * shall be in addition to the red lamp required in § 32-17-8."

While the foregoing indicates that defendants were violating several sections of our statutes from which the jury could find negligence, we now consider how they affected defendants' claim of plaintiff's contributory negligence as a matter of law.

■ In reviewing a ruling on a motion for a directed verdict and its complementary motion for judgment n. o. v. an appellate court views the evidence in a light most favorable to the party against whom the motions were directed; then without weighing the evidence it must decide if there is evidence which would have

supported or did support a verdict in his favor. Stated another way, this court must accept that version of the testimony and indulge in those legitimate inferences which support the verdict.[2]

Before measuring the facts upon which the jury could return a verdict for plaintiff under the comparative negligence standard, a review of the history of that act and some of our cases is appropriate. Our opinions show the difficulty the court has had in this field of negligence and the attempts to declare standards against which conduct should be measured to determine actionable negligence or its counterpart, contributory negligence.[3] They have been defined as a violation of the duty to use care which in general if the proximate cause of injury may result in legal liability for ensuing damages, or if contributory may defeat in whole or in part the damage claim.[4] Despite the difficulty mentioned by Judge Leedom,[5] the court in many opinions determined contributory negligence as a matter of law was present that barred recovery.[6]

This trend may have reached its apogee in 1927 when Culhane v. Waterhouse[7] was written, though Descombaz v. Klock[8] in 1931 was in a similar vein. In Culhane plaintiff's brother-in-law

---

2. Snell v. Watts, 77 S.D. 534, 95 N.W.2d 453; Block v. McVay, 80 S.D. 469, 126 N.W.2d 808; Waggoner v. Midwestern Development, Inc., 83 S.D. 57, 154 N.W.2d 803.

3. "Needless to say we are in a difficult field of law. To draw the line on cases where contributory negligence is shown as a matter of law has been a difficult problem for courts." Leedom, J., writing for the court in Winburn v. Vander Vorst, 1953, 75 S.D. 111, 117, 59 N.W.2d 819, 822. He added: "To refine the inquiry to the point where negligence is found as a matter of law but is recognized as only 'slight' according to the measure of the jury, presents difficulties of the same kind but on a magnified scale."

4. 57 Am.Jur.2d, Negligence, § 1; as to contributory negligence see Iverson v. Knorr, 68 S.D. 23, 298 N.W. 28; the rule is stated in Endorf v. Johnson, 59 S.D. 549 at 550, 241 N.W. 519 at 520.

5. Citation, note 3.

6. Anderson v. Langenfeld, 72 S.D. 438, 36 N.W.2d 388; Iverson v. Knorr, 68 S.D. 23, 298 N.W. 28; King v. Farmers Educational & Cooperative Oil Co., 72 S.D. 280, 33 N.W.2d 333, comparative negligence statute not cited or considered and Roberts v. Brown, 72 S.D. 479, 36 N.W.2d 665, and Dwyer v. Christensen, 76 S.D. 201, 75 N.W.2d 650, 56 A.L.R. 2d 734, where it was.

7. 51 S.D. 584, 215 N.W. 885.

8. 58 S.D. 173, 235 N.W. 502.

stopped his car facing west in front of a gate on the south side of the road to talk to his brother and plaintiff. The latter were off the traveled portion of the road at the crest of the ditch. When visiting there they observed the lights of defendant's car swaying back and forth approaching from the west. When the car was 100 feet away plaintiff said " 'That car is going to hit us' " and ran down into the ditch while her husband jumped to safety across the ditch. To avoid the standing car, defendant, who was so drunk he could not control his car, turned it to the right and into the ditch where it hit plaintiff. The jury verdict was for plaintiff. On appeal the court (three judges) held plaintiff was chargeable with negligence as a matter of law and directed the action be dismissed, saying she could have crossed the ditch and "gotten out of harm's way" inside the gate as did her husband and her spry 12 and 14-year-old sons.

Descombaz v. Klock, likewise, overturned a verdict for plaintiff who stopped his car at night to repair a flat tire. The rear light was not lighted but the headlights and a spotlight which lighted a fender were. The court accepted the jury verdict of defendant's negligence and though plaintiff was making an emergency tire repair held as a matter of law he was negligent for remaining in front of his car when as a prudent person he should have stepped to the edge of or in the ditch of the highway. Citing Culhane v. Waterhouse, the trial court was directed to dismiss the action.

Not all opinions, however, came to that end.[9] Carlson v. Johnke, 1931, 57 S.D. 544, 234 N.W. 25, affirmed a plaintiff's jury verdict in an opinion which included statements that a plaintiff's contributory negligence was not a defense where defendant's acts might be classed as reckless, wanton, wilful and of similar import. The reasoning of the Carlson opinion was discussed and distinguished in Descombaz v. Klock, supra, but later any language inferring the court had approved the doctrine of comparative negligence, or that wilful and wanton conduct was the same as gross

---

9. Wolff v. Stenger, 59 S.D. 231, 239 N.W. 181, is representative, and see West Dakota Digest, Automobiles, 245 or Negligence 136(26) for other cases. Griebel v. Ruden, 62 S.D. 469, 253 N.W. 447.

negligence was expressly repudiated.[10] Opinions of the tenor of Culhane and Descombaz resulted in efforts to ease their harshness by passage of our comparative negligence statute hereafter noted.

As forecast in Endorf v. Johnson, supra, the members of the court were not friendly to any comparative negligence doctrine. When in Holdhusen v. Schaible[11] it was contended the court in Carlson v. Johnke had recognized that doctrine, the court wrote that opinion gave "no recognition" to it and later in Wittstruck v. Lee, 1934, 62 S.D. 290, 252 N.W. 874, in what might be called its final epitaph, wrote of the Johnke opinion:

"It has frequently risen to haunt us * * *. This court has never been of the view that there exist degrees of negligence per se, it being our opinion that negligence is absolute, consisting in the failure to exercise the degree of care which the ordinary reasonable man would use under the circumstances. Neither does this court approve the doctrine of comparative negligence * * * whereby a jury may be permitted to attempt to measure the quantum of negligence of a contributorily negligent plaintiff as against the quantum of negligence displayed by the conduct of a defendant and award a recovery to plaintiff notwithstanding his contributory negligence if the jury believe such contributory negligence greatly outweighed by defendant's negligence. It is and has always been the rule of this state that plaintiff's contributory negligence bars his recovery as against a negligent defendant regardless of the relative amount of fault chargeable to either party * * *. As other courts which reject the doctrine of comparative negligence, we reject it, not because it is unsound as a matter of logic or technical theory or abstract speculation, but because experience has shown, as a practical matter, that it is not workable, there being no usable yardstick to measure the relative fault of the parties."

---

10. Endorf v. Johnson, 1932, 59 S.D. 549, 241 N.W. 519.
11. 1932, 60 S.D. 275, 279, 244 N.W. 392.

This was the attitude of a majority of the members[12] of the court when in Friese v. Gulbrandson[13] it was presented with the question of how to construe or apply the comparative negligence statute[14] enacted by the legislature in 1941. As that opinion recognized, it was patterned after a Nebraska statute and presumed the intention of the legislature was reflected by its previous construction of the courts of that state. After a review of the opinions of the Nebraska Supreme Court the Friese court opinion held:

"As we interpret the act, and as we understand it to have been interpreted by the Nebraska court, to bring a case within the rule of the statute, the contributory negligence of plaintiff must be no more than slight, and in addition, the negligence of defendant must be no less than gross or great in **comparison** with the slight or small contributory negligence of plaintiff." (Emphasis supplied)

The court in Ripp v. Riesland, 1960, 170 Neb. 631, 104 N.W.2d 246, reviewed its opinions including Morrison v. Scotts Bluff County, 1920, 104 Neb. 254, 177 N.W. 158, cited in the Friese opinion. This included opinions for the time prior to 1941 when South Dakota adopted the act. We quote from the Ripp opinion where it was written:

"Bezdek v. Patrick, supra, declares [167 Neb. 754, 94 N.W.2d [482] 485]: 'The words "slight" and "gross" as employed in the comparative negligence act of this state are comparative terms. The test the statute provides is not based upon absolute degrees of negligence but rather upon a comparative test of the relative degrees of negligence between the parties. The negligence of the plaintiff or defendant is **not** to be evaluated as slight,

---

12. In 1949, eight years after the passage of the act, the court in Will v. Marquette, 73 S.D. 192, 40 N.W.2d 396, wrote, "This jurisdiction does not recognize degrees of negligence." A different view is expressed in the dissent concurred in by two judges in Flanagan v. Slattery, 1951, 74 S.D. 92, 101, 49 N.W.2d 27, where it was said, "The comparative negligence law enacted in 1941 * * * has introduced into our law the idea that negligence can exist in degrees." The same judge also writing for the court in Roberts v. Brown, 72 S.D. 479, 485, 36 N.W.2d 665, 668, said of the conduct of plaintiff that it might facetiously be characterized as being "negligent carefully". We make these references to indicate the difficulty the court has had with this problem.

13. 1943, 69 S.D. 179, 8 N.W.2d 438.

14. Ch. 160, S.L. 1941, quoted in Friese v. Gulbrandson, note 13.

gross, or otherwise, **standing alone.** The criterion by which the degree of negligence of plaintiff is to be measured is the extent thereof **by comparison** with the negligence of defendant.' " (Emphasis supplied)

That such was and has been the construction of the Nebraska comparative negligence statute since announced in 1920 in Morrison v. Scotts Bluff County, supra, appears all through their many opinions down to the latest we have found, Burney v. Ehlers, 1970, 185 Neb. 51, 173 N.W.2d 398, which cites only the Morrison opinion.

While citing and believing it was following decisions of the Nebraska Supreme Court, this court in a series of opinions injected a different theory into our comparative negligence statute. Commencing with Kundert v. B. F. Goodrich Co., 70 S.D. 464, 18 N.W. 2d 786, followed by Will v. Marquette, 73 S.D. 192, 40 N.W.2d 396, and Creager v. Al's Construction Co., 75 S.D. 482, 68 N.W.2d 484, the court ended up in Dwyer v. Christensen, 76 S.D. 201, 75. N.W.2d 650, by writing:

"Whether plaintiff's negligence was slight or otherwise is **not** determined by comparing it with the negligence of the defendant. That determination under our rule is made by considering it separately from the negligence of the defendant." (Emphasis supplied)

This divergence was pointed out by Judge Blackmun, now Justice of the United States Supreme Court, in Associated Engineers, Inc. v. Job, 8 Cir., 370 F.2d 633, which this court later described as a good analysis of the case law in Nugent v. Quam, 1967, 82 S.D. 583, 152 N.W.2d 371 at 376. The Nugent opinion then noted the legislature in 1964 had enacted a change[15] in our statute as suggested by Judge Hanson in an article in the South Dakota Bar Journal. The court stated this change

15. Ch. 149, S.L. 1964, now SDCL "20-9-2. **Comparative negligence — Reduction of damages.** — In all actions brought to recover damages for injuries to a person or to his property caused by the negligence of another, the fact that the plaintiff may have been guilty of contributory negligence shall not bar a recovery when the contributory negligence of the plaintiff was slight in comparison with the negligence of the defendant, but in such case, the damages shall be reduced in proportion to the amount of plaintiff's contributory negligence."

" 'would require the determination of slight negligence to be made in comparison with negligence of the defendant rather than to determine the same in comparison with the ordinary prudent man.' We agree that this is the proper construction of the comparative negligence law * * * ".

The court followed this construction in Crabb v. Wade, 1969, 84 S.D. 93, 167 N.W.2d 546, when it wrote:

"Our comparative negligence law was simplified by amendment in 1964 by (1) requiring the determination of plaintiff's 'slight' contributory negligence to be made in direct comparison with the negligence of the defendant in each particular case rather than comparing it abstractly with the fictitious ideal, reasonable, prudent man as formerly required (see Dwyer v. Christensen, 76 S.D. 201, 75 N.W.2d 650, 56 A.L.R.2d 734), and (2) by eliminating the need of showing defendant's negligence 'gross' in comparison."

See also Smith v. Gunderson, 86 S.D. 38, 190 N.W.2d 841.

While a court may on motions for a directed verdict, requests for instructions, etc. be called upon to determine if there is any evidence of negligence[16] or contributory negligence[17] to be submitted to a jury or if the undisputed evidence of contributory negligence is such as to bar recovery[18] and for the purpose of ruling thereon considers negligence by the standard of conduct prescribed by statute or of a reasonably prudent man, yet when negligence is thus found the jury is then instructed to

---

16. Larson v. Loucks, 69 S.D. 60, 6 N.W.2d 436.

17. McDonnel v. Lakings, 78 S.D. 195, 99 N.W.2d 799; Crabb v. Wade, supra.

18. In Nugent v. Quam, supra, the majority opinion wrote "Although the character of the plaintiff's contributory negligence under the present comparative negligence law is not to be determined by comparison to the care exercised by the reasonable man as an absolute standard but must be compared to the negligence of the defendant, the norm of conduct of the ordinarily reasonable, and prudent man must be considered in determining the extent to which each party fell below the standard and thus was guilty of negligence or contributory negligence". As stated in Crabb v. Wade, supra, "in Nugent the court concluded plaintiff's contributory negligence was more than slight as a matter of law as it equaled or nearly equaled the negligence or want of care exercised by defendant," 84 S.D. at 98, 167 N.W.2d at 549.

compare the negligence of the parties as the statute provides. See S. D. Pattern Jury Instructions set out in Nugent v. Quam, 82 S.D. at 594, 152 N.W.2d at 377. Therefore, this court has recognized the prudent-man rule set out in Dwyer v. Christensen has been changed and is no longer in effect, and we now turn to application of the Nugent v. Quam and Crabb v. Wade comparison of negligence guidelines.

 Our cases do not spell out any rule of thumb to be followed in applying our comparative negligence law; to the contrary, the nonexistence of such rule is made clear. Each case must be determined upon the facts presented and the result seems to depend upon the composite judgment of the members of the court as to whether reasonable men might differ upon whether the plaintiff's acts constitute negligence more than slight in comparison with the negligence of the defendant. Dwyer v. Christensen, supra, as modified by Ch. 149, S.L. 1964, and Nugent v. Quam, supra. The result must always depend upon the circumstances of the particular case.

 Earlier in the opinion some of the facts have been outlined. From them the jury could conclude plaintiff was driving south on his own side and the west lane of a bituminous highway at a time when lights were required; that as he proceeded south he saw two white lights of what he naturally thought was a truck or "semi" approaching him; it was also in the west lane of the highway; the two lights were small and high as on a "semi" and they appeared to be farther away than they were; he thought the vehicle would pull over to its correct lane, and when he realized it was not going to do so he pulled to the left too late to avoid hitting the back and left rear side of defendant's slow-moving combine.[19] Defendants' evidence was that there were two lights — one about seven feet and another four and a half feet from the ground; that one of these white lights was directed to the rear to light the combine machinery to observe what was coming out of the combine when it was used in the fields for night operations, and another light that could be adjusted to show to the rear; that

---

19. Carlson v. Johnke, 57 S.D. 544, 234 N.W. 25; Audiss v. Peter Kiewit Sons Co., 8 Cir., 190 F.2d 238.

one of these lights could be turned on red or white and had been turned on red; other evidence indicated the lights shining to the rear were white. Our review of the evidence accepts that which is most favorable to plaintiff. See note 2.

Defendants failed to have a lighted rear lamp on the left side exhibiting a red light visible for 500 feet to the rear as required by SDCL 32-17-14 and 32-17-8; they also failed to have the two similar additional red lamps on the extreme right and left sides of the rear (the vehicle being over 83 inches in width) as required by SDCL 32-17-14 and instead had two white lights similar to those on a truck or "semi" shining to the rear of the combine which led plaintiff to believe the vehicle was traveling north and approaching plaintiff. Plaintiff had a right to assume the truck, as he thought it to be, would be properly lighted and observe the law of the road, and if approaching him, as defendants' lighting violations indicated, it would be operated in obedience to the law of the road and turn to the apparent right or east side of the highway. Failure to comply therewith under the exceptional facts here gave rise to an emergency in which plaintiff was required to act instantly. If any duty to sound his horn, slow or stop his car existed, it did not arise until he discovered the falsefront or "camouflaged"[20] danger defendants had created. See Zeller v. Pikovsky, 66 S.D. 71, 278 N.W. 174. During all this time the combine operator was violating SDCL 32-22-2, mentioned earlier, which made it unlawful to move the combine which was over 96 inches wide in dark time. Because of this prohibition of moving it on the highway plaintiff could not be held to expect this violation or that part of the vehicle would extend two and a half feet over the legal limit. The jury could find that part of it was over the center line.

Defendants urge King v. Farmers Educational & Cooperative Oil Co., 72 S.D. 280, 33 N.W.2d 333, is similar to the case at bar and supports the trial court's action as

20. Dwyer v. Christensen, note 6, and Knapp v. Styer, 8 Cir., 280 F.2d 384.

"No comparative negligence instruction was request-
ed nor given in the present case, **nor was (the) compar-
ative negligence law applicable in the King case."** (Em-
phasis supplied.)

The part emphasized is the answer to defendants' argument. That
was said in Dwyer v. Christensen, supra, where defendant relied
"heavily" on the King opinion and the court wrote: "in that case
the Court was concerned with determining whether conduct was
negligent, not whether the negligence was slight or otherwise".
The comparative negligence statute is to be applied here, so King
is not apposite. Further, in King defendant's truck was equipped
with reflectors, a taillight and seven other red lights.

What was said in Winburn v. Vander Vorst, 75 S.D. 111, 59
N.W.2d 819, on rehearing, is more pertinent as that opinion con-
sidered the 1941 comparative negligence law.

While the conclusion reached here may also have been
sustained without reliance on our comparative negligence statute
(as Judge Winans believes), it is unnecessary to consider that al-
ternative for the statute declares the legislative yardstick and rule
applicable, and we believe we should apply it on this appeal.

The judgment appealed from is reversed and the judgment for
plaintiff reinstated.

WINANS, WOLLMAN and DOYLE, JJ., concur.

HANSON, P. J., concurs in result.

HANSON, Presiding Judge (concurring).

Because of widespread dissatisfaction existing in the bench
and bar our Comparative Negligence Act was amended by Chap-
ter 149, Session Laws of 1964 so it would conform to the interpre-
tation of the parent state of Nebraska. It has subsequently been
interpreted by our court in three cases: Nugent v. Quam, 82 S.D.
583, 152 N.W.2d 371; Crabb v. Wade, 84 S.D. 93, 167 N.W.2d 546;
Smith v. Gunderson, 1971, 86 S.D. 38, 190 N.W.2d 841.

In my opinion Crabb v. Wade correctly reflects the present attitude of the court with reference to the present meaning and proper application of our Comparative Negligence Act:

"As pointed out in Nugent v. Quam, 82 S.D. 583, 152 N.W.2d 371, there can be no application of this law unless both parties are guilty of negligence proximately causing or contributing to the injuries complained of. **The negligence of both parties must, therefore, be first considered and determined separately by the common standard of the reasonably prudent man.** If the parties are both found to be causally negligent, the jury then determines if the contributory negligence of the plaintiff is slight in comparison with the negligence of the defendant.

"The court indicated in Nugent the word 'slight' means small in quantum in comparison with the negligence of the defendant. However, by eliminating the 'gross' comparison feature and by requiring direct comparison of the parties' negligence the 1964 amendment to our comparative negligence act, in effect, enlarged or expanded the scope of the term 'slight contributory negligence'. It is now a relative and variable term which defines precise definition and prohibits an arbitrary mathematical ratio limitation. Broadly speaking, our comparative negligence act now applies whenever a plaintiff's contributory negligence is determined to be small in comparison with defendant's negligence. What constitutes 'slight' or 'small' contributory negligence naturally varies with the facts and circumstances in each case. The same conduct constituting slight or small contributory negligence in one case may be great in others when compared with the negligent acts of different defendants under different facts and circumstances." (emphasis supplied.)

It is difficult for me to see the relevancy of a pre-amendment historical review of our Comparative Negligence cases to any of the issues involved. As I agree with the ultimate conclusion reached in the opinion I concur in that result.