NATIONAL BANK OF COMMERCE OF NEW YORK, Appellant, v. BOTTOLFSON, Respondent.

(225 N. W. 385.)

(File No. 6404. Opinion filed May 17, 1929.)

*Lyon, Bradford & Grigsby*, of Sioux Falls, for Appellant.
*Payne & Olson* and *Gunderson & Gunderson*, all of Vermillion, for Respondent.

FULLER, C. On June 29, 1923, the respondent, Bottolfson, made and delivered to the Commercial & Savings Bank of Sioux Falls a promissory note, which, omitting date and signature thereon, is as follows: "June 29, 1924, after date for value received, the undersigned promises to pay to the order of Commercial and Savings Bank, Sioux Falls, South Dakota, Nine Thousand Five Hundred Fifty-four and 00-100 Dollars at Commercial and Savings Bank, Sioux Falls, South Dakota, with interest at the rate of 7 per cent per annum from date, payable semi-annually. All principal and interest shall bear interest at the rate of ten per cent per annum after due, payable semi-annually. The makers, endorsers and guarantors of this note and the sureties hereon, severally waive presentment for payment, protest and notice of dishonor, and consent that the time of its payment may be extended without notice,

all defense on the ground of any extension of time of payment being hereby waived."

On August 9, 1923, the cashier of the payee bank addressed and mailed a letter to the plaintiff, National Bank of Commerce of New York, in part as follows: "Enclosed find note of this bank for $50,000.00 due in ninety days, secured by collateral listed below, which we wish you to discount and credit proceeds to this bank. We trust the same will prove satisfactory."

In this letter, with a note of $50,000, by the Commercial & Savings Bank payable to plaintiff bank, there was inclosed, with other notes, the Bottolfson note first above mentioned, indorsed by the payee. The note of $50,000 was promptly discounted and the Commercial & Savings Bank was given credit, with plaintiff bank, for the proceeds. At maturity of the $50,000 note, it was renewed by a new note of the same amount, secured by the same collateral, including the Bottolfson note, which note was likewise discounted and the proceeds credited to the Commercial & Savings Bank.

This action was commenced by the National Bank of Commerce of New York against Bottolfson for the amount due upon his note, upon which no payments had been made. Upon the answers of a jury to special interrogatories of the court, judgment was entered below for the defendant, from which judgment, and from order overruling motion for new trial, plaintiff appeals. The defendant pleaded fraud in the procuring of his signature to the note, and serious questions of substance, pertinent to that defense, are argued on this appeal. But it is not claimed that the plaintiff had knowledge or was placed upon any notice of the facts which are claimed to be sufficient to establish fraud on the part of the Commercial & Savings Bank, the payee of the note. On the contrary, it was stipulated that plaintiff bank had no actual notice or knowledge of any claim of defense to the Bottolfson note.

■ Preliminary to the question on which we think this appeal should turn, we may consider whether the Bottolfson note, first above set forth, is a negotiable instrument. Respondent contends that the note is not certain in point of date of payment, due to the fact that, by its terms, the makers and indorsers are bound to any extension of time of payment that the holder may see fit to grant; that the date of maturity is rendered uncertain because such extension may be granted before maturity as well as after maturity;

and that the note, for these reasons, does not comply with Rev. Code, § 1708. So far as here important, the provisions of statute, applicable, read thus:

"An instrument to be negotiable must conform to the following requirements: * * *

"3. Must be payable on demand or at a fixed or determinable future time." Rev. Code, § 1705.

"An instrument is payable at a determinable future time, within the meaning of this part, which is expressed to be payable:

"1. At a fixed period after date or sight; or,

"2. On or before a fixed or determinable future time specified therein." Rev. Code, § 1708.

The foregoing provisions are identical with portions of sections 1 and 4 of the Uniform Negotiable Instruments Act; 5 U. L. A. pp. 7, 41. Although courts differ concerning the question, this court is definitely aligned with the view that provisions, in a note, for extension of time of payment without notice to the makers, indorsers, and guarantors, does not render the note non-negotiable. Security National Bank v. Gunderson, 52 S. D. 25, 216 N. W. 595, 596. The instrument here in suit is therefore a negotiable instrument.

A motion by appellant for directed verdict having been denied, the trial court, as above stated, submitted certain special interrogatories to the jury. The answers to these questions form a special verdict upon which the judgment appealed from is based. All of these questions, save one, pertain to alleged facts involved in the matter of fraud. The one special finding, material to this appeal, is as follows:

"Question: What, if anything, did the Commercial and Savings Bank of Sioux Falls owe upon the renewed note of the latter bank to the New York bank, March 31, 1925? A. Nothing."

After verdict the plaintiff moved that this finding of the jury be vacated and that plaintiff have judgment notwithstanding the verdict. The motion was denied.

The only evidence on the question as to the amount due plaintiff on the $50,000 note of the Commercial & Savings Bank is found in a deposition of plaintiff's vice president, taken about six months before the trial. This witness testified that the note of $50,000 was received, as first above stated, from the Sioux

Falls Bank with the Bottolfson note, and other notes, as collateral, and that it was renewed at maturity by another note of $50,000 with the same collateral. The witness further stated that the appellant bank had received no payments on the note up to January 25, 1924, on which date appellant was advised that the Sioux Falls bank had been placed in the hands of the state banking department; that receiving this information the appellant bank immediately applied, upon the $50,000 note, the money it held to the credit of the Sioux Falls bank, in the sum of $3,226.81. "Since that time," stated the witness, "we have received payments and realizations amounting to $36,033.09."

The fair inference from this testimony is that the amount unpaid on the $50,000 note at the time the witness testified was, at least, the principal sum of $50,000 less the sums last above stated. As a matter of ordinary calculation, the unpaid amount thus ascertainable from the testimony of the witness was $10,740.10.

This affirmative testimony entitled plaintiff to the benefit of the presumption that a condition once shown to exist may be presumed, within reasonable limitations, to continue. To reject such proof as inadequate because taken by deposition a few months, or let us say a few weeks, before trial, would be to assert a proposition of unusual if not of startling consequence in the field of the law merchant. To escape the effect of such a theory the holder would have always to personally attend at trial, or trust to the presence and testimony of others who might be adversely interested. Such a result might not seem of extraordinary application to other subjects of litigation, but it would not seem to harmonize with the particular objects which brought the law merchant into existence. The testimony of plaintiff's vice president aforesaid was uncontradicted. Where the testimony of a witness is uncontradicted and not inherently improbable, and there are no circumstances tending to raise a doubt of its truth, the facts so proven should be taken as conclusively established and verdict directed or decision entered accordingly. Jerke v. Delmont State Bank, 54 S. D. 446, 223 N. W. 585, 590; Quock Ting v. United States, 140 U. S. 417, 11 S. Ct. 733, 851, 35 L. Ed. 501, 503.

In the foregoing conclusion we have, by implication, assumed that plaintiff had the burden in this case of proving the amount unpaid on the main obligation of $50,000, there being no

question of the nonpayment of the collateral Bottolfson note sued upon. In that view we have not ignored the rule that the matter here considered must usually be pleaded by the maker, who has the burden of proving the defense (Jones on Collateral Security, § 675); or the rule that payment must usually be specially pleaded by the defendant (4 Bancroft's Code Pleading, p. 3665); or the rule that payment may not be shown under a general denial of an allegation in the complaint of a specific balance due (Id.; Codington County Land Co. v. Hill, 48 S. D. 90, 91, 202 N. W. 637); or the rule that the defendant, pleading payment, has the burden of proving payment (National Bank v. Myers, 34 S. D. 231, 233, 147 N. W. 991). And we have not overlooked the principle that possession by the plaintiff of the note itself, being no evidence of payment, raises a presumption that it is unpaid (1 Bancroft's Code Pleading, p. 980), and that the production of a negotiable instrument by the plaintiff from his possession raises a presumption of ownership and right to sue thereon. 1 Jones' Commentaries on Evid. § 302; Id. § 183; Robinson v. Pierre Ind. School Dist., 54 S. D. 387, 223 N. W. 324, 325. But there is a peculiarity in this case similar to that of the Continental & Commercial Nat. Bank v. Jefferson, 51 S. D. 477, 483, 215 N. W. 533. Plaintiff alleged that it was a holder and owner of the Bottolfson note, no reference being made to the fact that the note was received as collateral or that any sum was due upon the main obligation. Plaintiff established (1). that it was a holder in due course of the Bottolfson note, but that fact, as we shall see, would not entitle plaintiff to a recovery unless it further appeared, by proof or presumption, that a sum remained due on the main obligation of $50,000 given by the Commercial & Savings Bank, to the plaintiff National Bank of Commerce. Although plaintiff (2) alleged title to the Bottolfson note as owner, the facts shown by plaintiff at the trial demonstrated that it was not the owner of the paper but, rather, a holder of the same for the purposes of collateral. This particular and peculiar circumstance, under the decision of Continental & Commercial Nat. Bank v. Jefferson, supra, placed the burden on plaintiff to establish a right to recover in its true capacity, as the holder of collateral. That burden required proof of the amount, if any, due on the main note of $50,000 above mentioned.

From the foregoing it follows that the special finding of the

jury above quoted—that nothing was due from the payee bank to plaintiff on the main obligation of $50,000—is not supported by any evidence, and that the uncontradicted evidence shows $10,740.10 to have been due thereon. It is our conclusion that verdict should have been directed in plaintiff's favor for that sum, which is a less amount than the amount due on the Bottolfson note sued upon.

It is worthy of remark that the basis for this view (that recovery should be limited to the amount due on the main obligation) is not within but wholly without the provisions and objects of the negotiable instruments law. Plaintiff, in this case, as in Continental & Commercial Nat. Bank v. Jefferson, is a holder in due course. The note is a negotiable instrument. It was regularly negotiated to plaintiff before maturity for value. It was taken by plaintiff in good faith and without knowledge of infirmity or of defect in the title of the payee. But, in view of the defense of fraud, good against the payee, the Bottolfson note was shown to have been negotiated to plaintiff in breach of trust. See discussion of Judge Campbell in Jerke v. Delmont State Bank, 54 S. D. 446, 223 N. W. 585, at page 595. Any excess recovered by plaintiff above the amount due under its main obligation would be returned, in the ordinary course of events, to the payee, against whom defendant's plea was good. Received by the payee, the sum recovered, in excess of the amount due upon the main obligation, would become a constructive trust in the hands of the payee for the use and benefit of defendant. See notes, 11 Am. St. Rep. 321; 20 R. C. L. 2062. Equity will therefore look through the mere forms of procedure, and reach an immediate and conscionable result, by limiting plaintiff's recovery to the amount due on the main obligation. In short, the defendant, under the circumstances here shown, may be said to have an equitable interest in the very note of which plaintiff claims ownership, and the determination of the equities between the parties is in no manner affected by the law of negotiable instruments which requires, for recovery, a mere showing that plaintiff is a holder in due course. In Jerke v. Delmont State Bank, 54 S. D. 446, 223 N. W. 595, reference was made to Rev. Code, § 1758 (Uniform Negotiable Instruments Act, § 54), and it was declared that the section imported into the negotiable instruments law the general equitable principle of constructive trusts. With respect to the instant case it cannot be said that

any provision of the negotiable instruments law as adopted in this state recognizes the equitable principle here stated—that the holder of collateral, though a holder in due course, may recover only the amount shown to be due on the main obligation, where the maker has a defense good against the payee. But for the same reason that the payee, who negotiates the paper in breach of trust, may be considered as a trustee of everything he may receive for the note (Jerke v. Delmont State Bank, supra), it must follow that the holder in due course of collateral, whose principal claim against the payee is less than the amount due on the collateral, must be measurably viewed as a trustee for the maker, whose note was transferred, by the payee, in breach of trust, after that holder has sued upon the note and, by the issues of the case, has become apprised of the facts. After all, the Uniform Negotiable Instruments Act is but an outgrowth of those customs of merchants which, as the law merchant, became grafted in the common law and, to the common law, equity is parallelistic and intended to accomplish the dictates of natural justice where the common law is inadequate.

Nor is our assumption, hereinbefore mentioned, that the burden was upon the plaintiff to prove the amount due on the main note, based upon any provision of the negotiable instruments law. Revised Code, § 1763 (Uniform Negotiable Instruments Act, § 59), requires only proof, by the plaintiff, that he acquired title as a holder in due course—when defect in the title of the payee is proven by defendant. It is to be admitted that the matter here involved must, in the ordinary case, be of special defense with the burden of proof on defendant. Jones on Collateral Security, § 675.

But plaintiff did not plead both notes and did not plead the fact of nonpayment or of a balance due upon the $50,000 note, thus requiring as a special defense the plea of payment of that note in the answer. And the plaintiff did not produce both notes at the time of trial, thereby to gain the benefit of any presumption as to nonpayment. The plaintiff merely pleaded as owner of the Bottolfson note—in addition to holding in due course—and plaintiff's evidence brought into view the equities of defendant here discussed.

In this case we have assumed that the defense of fraud was proven, and we have not considered numerous questions which pertain to that defense. It is not unlikely that the amount due on

the $50,000 note, with interest, is equivalent to the amount due on the Bottolfson note, with interest. In that event the additional questions here presented would not be material to this appeal. The comparative amounts of the two ·notes with interest not being shown, we need not by conjecture consider these questions important in contemplation of retrial.

The judgment and order appealed from are reversed.

SHERWOOD, P. J., and POLLEY, CAMPBELL, and BURCH, JJ., concur.

BROWN, J., absent.