Larry G. FLUHARTY, Plaintiff
and Appellant,

v.

MIDLAND NATIONAL LIFE INSUR-
ANCE COMPANY, Defendant
and Respondent.

No. 12371.

Supreme Court of South Dakota.

Argued Nov. 15, 1978.

Decided Feb. 15, 1979.

Charles Rick Johnson of Johnson, John-
son & Eklund, Gregory, Ronald C. Aho,
Brookings, for plaintiff and appellant.

Alan L. Austin of Austin, Hinderaker &
Hackett, Watertown, for defendant and re-
spondent.

ANDERST, Circuit Judge.

This is an appeal from the trial court's
granting and entering a judgment notwith-
standing the verdict for $27,936.00, the full
amount of respondent's claim, after the
jury had returned a verdict in the amount
of $13,918.00. We affirm with directions.

Appellant, Larry G. Fluharty (Fluharty), met one M. Ted Steinberg (Steinberg), a general agent for Midland National Life Insurance Company (Midland), in 1971 when Steinberg prepared a family estate plan for him. Thereafter in August, 1971, Fluharty went to work for the Steinberg Agency as an agent for Midland. Later in September, 1972, Midland, with Steinberg's consent, made Fluharty a district agent, which increased Fluharty's commissions over those he received as an agent. During this period of time, both Steinberg and Fluharty received cash loans from Midland in the form of checks at regular intervals. The checks bore an endorsement expressly stating that the amount of the check was a loan subject to repayment on demand. The amount of these loans was based on past production and future anticipated commissions with which Midland credited their accounts as they were earned. Also charged against their accounts were social security payments, group insurance premiums, and medical examination fees of persons not purchasing insurance, that were paid by Midland.

At the suggestion of Midland, it was determined that it would be in the best interests of all parties if the Steinberg Agency was reorganized to make Fluharty a principal. This was accomplished in February, 1973, when Steinberg and Fluharty formed Agri Estates, Inc., a de facto corporation. To effectuate this reorganization, the parties executed documents wherein Agri Estates, Inc. became a general agent; Steinberg and Fluharty became district agents; Steinberg and Fluharty assigned all past and future commissions to Agri Estates, Inc.; Agri Estates, Inc. assumed all the obligations and debts of Steinberg as general agent and Fluharty as agent; and Steinberg and Fluharty individually assumed personal liability for all the debts and obligations of any nature whatsoever of Agri Estates, Inc. Midland continued to make loans in the form of checks at regular intervals to Steinberg and Fluharty.

Agri Estates, Inc.'s production began to fall, and Fluharty received his last loan check November 27, 1973, with Steinberg receiving his last loan check March 26, 1974. Midland, by letter of November 13, 1974, advised Agri Estates, Inc., with copies to Steinberg and Fluharty, that its total indebtedness amounted to over $40,000. By letter dated January 24, 1975, Midland demanded payment of the then balance due of $39,901.85.

Steinberg and Fluharty, individually and d/b/a Agri Estates, Inc., initiated an action against Midland on July 25, 1975. The same date Midland commenced a three-count action against Steinberg and Fluharty: Count I against Steinberg individually; Count II against Fluharty individually; and Count III against Steinberg and Fluharty jointly. Upon motion, the court consolidated the actions, treating the complaint by Midland as a counterclaim in the action brought by Steinberg and Fluharty. In April, 1976, Steinberg and Fluharty retained different counsel. The matter was scheduled for trial on September 3, 1976. Neither Steinberg nor Fluharty or their counsel appeared on the date of trial. After attempts to reach counsel by telephone were unsuccessful, the court proceeded to hear the matter and entered a default judgment in favor of Midland and against Steinberg, Fluharty and Agri Estates, Inc. Notice of entry of judgment was served on counsel, and Midland proceeded to execute thereon.

Fluharty retained different counsel, who with Steinberg's attorney prevailed upon the court to re-open the matter for trial to a jury upon the merits. Present counsel was retained by Fluharty in July, 1977, and jury trial on the merits was scheduled for September 15, 1977.

The day trial was to commence, counsel for Steinberg moved for a continuance on the ground that Steinberg was afraid of Fluharty and feared for his life. This motion, opposed by both Fluharty and Midland, was denied by the court. Counsel for Steinberg then left the courthouse and there was no further participation by him or Steinberg in the proceedings.

Counsel for Fluharty then moved to amend his pleadings, the effect of which dismissed any claim Fluharty may have had against Midland and denied Midland's claim against him. Midland then proceeded to prove up its designated counterclaim. Introduced into evidence were all the loan checks Midland had made to Steinberg and Fluharty. For accounting purposes, Midland kept a separate account for Fluharty, Steinberg and Agri Estates, Inc. Computer printouts showing the loan checks and other charges made by Midland to each separate account together with credits received for commissions earned were introduced into evidence. Just prior to trial, Midland moved its main office from Watertown to Sioux Falls. The printouts for the years 1971 and 1972 were misplaced. However, copies had been furnished to Steinberg's and Fluharty's original counsel by Midland. Evidence presented by Midland showed a total balance due and owing to it for the three accounts in the amount of $27,836. Midland's evidence further showed that copies of these printouts had been sent at regular intervals to Agri Estates, Inc.'s business address. At the close of all evidence, counsel for Midland moved the court to direct a verdict in its favor, which was denied. The jury returned a general verdict in favor of Midland against Steinberg and Fluharty individually and doing business as Agri Estates, Inc. in the sum of $13,918.

Upon motion of counsel for Midland, the court then entered a judgment notwithstanding the verdict in the sum of $27,836 against Steinberg and Fluharty individually and Steinberg and Fluharty d/b/a Agri Estates, Inc. The appeal is only from that part of the judgment against Fluharty individually.

▇▇▇ A motion for judgment notwithstanding the verdict is retroactive in effect and relates back to and is based upon the previous motion for directed verdict. *Barnhart v. Ahlers*, 79 S.D. 186, 110 N.W.2d 125 (1961). On appeal, correct rules of law must be applied rather than the law set forth in the instructions to the jury. *Frag-*

*er v. Tomlinson*, 74 S.D. 607, 57 N.W.2d 618 (1953). The standard in reviewing a judgment n. o. v. is that the appellate court views the evidence in a light most favorable to the party against whom the motion was directed, and without weighing the evidence, decides if there is evidence which would have supported or did support a verdict in his favor. *Corey v. Kocer*, 86 S.D. 221, 193 N.W.2d 589 (1972).

Appellant's main contention is that the checks sent to him and Steinberg were advances and not loans. The general rule is set out in 3 Am.Jur.2d, Agency, § 218, wherein it is stated:

> Whether or not money given by a principal is given as an advance and is to be repaid by the agent in the event that his commission or other compensation does not amount to the sum advanced is dependent upon the interpretation of the contract between them. Generally, where the contract of employment provides for a drawing account or advances to the agent against future commissions, the employer cannot, in the absence of either an express or implied agreement or promise to repay any excess of advances over the commissions earned, recover from the employee such excess. If, however, the contract contains in terms a promise by the agent to repay the sums advanced, the principal may recover the excess of the advances over the commissions . . . ..

Appellant admitted he endorsed the checks he received with the printed endorsement stating the check constituted a loan subject to repayment on demand. He also admitted he executed all the documents creating Agri Estates, Inc. Further, he admitted executing the documents between himself individually and Midland, as well as in behalf of Agri Estates, Inc. and Midland. The trial court was correct in ruling, in view of this evidence, that the checks paid to Steinberg and Fluharty were loans and not advances. The trial court was also correct in its ruling that Steinberg and Fluharty had agreed that Midland could charge them for group insurance,

medical examinations of persons not purchasing insurance, and social security. Thus the trial was in effect an accounting.

■ Appellant did not dispute that he or Steinberg had received the loan checks. Neither did he present any evidence that Midland did not give them full credit for commissions earned. Appellant's premise was that Midland's failure to produce the computer printouts for 1971 and 1972 rendered its accounting suspect. As we stated in *Jerke v. Delmont State Bank*, 54 S.D. 446, 467, 223 N.W. 585, 594 (1929):

> [T]he rule of reasonable judgment must be applied to each case upon its particular facts, and, if the testimony in behalf of the party having the burden of proof is clear and full, not extraordinary or incredible in the light of general experience, and not contradicted, either directly or indirectly, by other witnesses or by circumstances disclosed, and is so plain and complete that disbelief therein could not arise by rational processes applied to the evidence, but would be whimsical or arbitrary, then, and in such case, it is not only permissible, but highly proper, to direct a verdict . . . . .

No evidence, documentary or otherwise, was introduced challenging the accuracy of the figures presented by Midland. Reasonable minds could not have differed over the amount owed Midland, for there was no basis upon which the jury could rationally have arrived at a verdict in an amount other than established by Midland's evidence.

■ When the facts and circumstances have warranted it in a particular case, this court has never hesitated to approve the direction of a verdict for a party having the burden of proof. We conclude that the trial court was correct in entering judgment notwithstanding the verdict.

■ It was brought to the attention of the court at oral argument that the clerk of courts had made an error in computation of the total judgment when taxing costs. Written consent to correct the error was made by Midland. We affirm the trial

court in granting the judgment n. o. v., but remand with directions that the trial court correct the error in the total judgment by inserting the correct amount of $32,690.87 for the amount now appearing.

WOLLMAN, C. J., and MORGAN, J., concur.

HENDERSON, J., concurs specially.

FOSHEIM, J., deeming himself disqualified, did not participate in this opinion.

ANDERST, Circuit Judge, sitting for DUNN, J., disqualified.

HENDERSON, Justice (concurring specially).

I wish to specially concur but with some elaboration.

This entire case hinges on whether Fluharty's incoming checks from Midland were "loans" or "advances".

The checks bore endorsements of Fluharty that they were "loans" subject to repayment on demand.

The endorsements on the checks were as follows: "This endorsement constitutes my acknowledgement of receipt of the amount of this check from Midland National Life Insurance Company of Watertown, South Dakota, as a loan, subject to repayment on demand, said amount to be charged to my account as an acknowledged indebtedness to the Company."

These endorsements impaled Fluharty on the altar of debt.

The verdict of the jury in this case was exactly one-half, to the penny, of the amount sued for by Midland on its counterclaim. The amount sued for was $27,836. The verdict returned was for $13,918. This was obviously a compromise verdict.

It is always a mystery as to how a jury arrives at a verdict. However, it appears to me that this compromise verdict was arbitrarily rendered. My assumption is based on the record. It is a rare bird in a jury trial when a defendant and his lawyer are not in the courtroom during the course of the trial. The defendant, Steinberg, and

his lawyer never appeared in the courtroom. Fluharty and Steinberg were both sued. They were sued as follows: "M. Ted Steinberg, Larry G. Fluharty, individually, and M. Ted Steinberg and Larry G. Fluharty, d/b/a Agri Estates, Inc.". The jury was submitted two verdict forms, one stated VERDICT FOR PLAINTIFF and the other stated VERDICT FOR DEFENDANT. The foreman signed the VERDICT FOR DEFENDANT, which stated as follows: "We the Jury duly empanelled in the above-entitled action and sworn to try the issues find for the defendant and assess defendant's damages at the sum of $13,918." I am of the opinion that the jury awarded one-half of the damages upon the basis that Fluharty should only pay one-half and no more. This verdict was not supported by the evidence or instructions. The nonpresence of Steinberg, in my opinion, confused the jury. However, I hasten to point out in court instructions 9 and 11 the trial judge made it apparent to the jury that Steinberg and Fluharty were being sued as parties to the action both individually and doing business as Agri Estates, Inc.

After the loan checks had been proven up in this case establishing Steinberg's and Fluharty's joint and several liability, Fluharty had the burden of proving any offsets or payments and no evidence of any substance was offered on Fluharty's part to raise any issues with respect to these loan checks, or to controvert the evidence of Midland that the balance due was $27,836. Accordingly, I would hold that the lower court was right in granting the Judgment Notwithstanding the Verdict.

For an interesting and recent case on this subject, which I cite with approval, see *United American Life Insurance Company v. Urman*, Colorado, 495 P.2d 1158 (1972), which generally holds that an agent is personally bound to repay loans without regard to commissions or advances, depending upon the contract in existence between the agent and insurance company.

A good example of a situation where a directed verdict is called for or Judgment Notwithstanding the Verdict should be entered, is found in *National Bank of Commerce v. Bottolfson*, 55 S.D. 196, 225 N.W. 385, 69 A.L.R. 892 (1929). In that particular case, there was no affirmative testimony as to the amount unpaid on a note and there was no showing otherwise. In this particular case, Fluharty did not plead, nor prove, payment. The jury accepted the accounting of Midland to the penny, for the verdict was exactly one-half of what the accounting showed.

Fluharty by assignment of error and by way of brief, urges that the lower court's ruling was nothing more than an unconstitutional substitution of its opinion for the jury's opinion about a fact question. He cites Article VI, Section 6, of the South Dakota State Constitution and the Seventh Amendment to the United States Constitution.

This argument begs the issue of whether or not a court can make determinations of law during the course of the trial that takes away the ultimate determination of the jury and particularly where a jury has rendered a verdict.

Our state statute on motions for Judgment Notwithstanding the Verdict is found at SDCL 15–6–50(b). It is identical to 50(b) of the Federal Rules of Civil Procedure. Technically, Rule 50(b) allows a party to renew his motion for a directed verdict. Federal Rule 50 was amended in 1963 so that the caption of the rule now speaks of "Judgment Notwithstanding the Verdict". Prior to 1963, the federal rules had not used that term.

The constitutionality of Federal Rule 50 is thoroughly settled. Thus, the decisions with respect thereto are applicable to our rule, SDCL 15–6–50(b). According to the rules of common law, the right to a jury trial was preserved by the Seventh Amendment to the Constitution. The common law has the well-established principle that although questions of fact must be decided by the jury and may not be reexamined by the court, the question as to whether or not there is sufficient evidence to raise a question of fact to be presented to the jury is a question of law to be decided by the court.

*Taylor v. Interior Enterprises, Inc.*, Alaska, 471 P.2d 405, 407 (1970).

As early as 1850 our United States Supreme Court approved the grant of a directed verdict, *Parks v. Ross*, 52 U.S. 362, 13 L.Ed. 730 (1850). Although there was considerable controversy about the propriety and practice of granting a directed verdict, it appears that this was resolved in 1943 in the case of *Galloway v. United States*, 319 U.S. 372, 63 S.Ct. 1077, 87 L.Ed. 1458 (1943). The waters have not been so smooth with respect to Judgments Notwithstanding the Verdict throughout contemporary judicial times. In the case of *Slocum v. New York Life Insurance Co.*, 228 U.S. 364, 33 S.Ct. 523, 57 L.Ed. 879 (1913), our United States Supreme Court held that the entry of judgment contrary to the verdict was a violation of the Seventh Amendment. However, this was largely qualified in 1935 in the case of *Baltimore & Carolina Line v. Redman*, 295 U.S. 654, 55 S.Ct. 890, 79 L.Ed. 1636 (1935). In the latter case, the trial judge had expressly reserved his decision on motions for directed verdict and had submitted the case to the jury subject to the reservations. However, in the *Slocum* case, the judge had unconditionally submitted the case to the jury. This was the distinguishing factor. It is to be noted that in the instant case before us that a motion for a directed verdict had been made, the reasons set forth in particularity and that the judge submitted the case to the jury with the motion for directed verdict by Midland. Under Federal Rule 50(b) and our state statute, SDCL 15–6–50(b), the rule now provides:

> Whenever a motion for a directed verdict made at the close of all the evidence is denied or for any reason is not granted, *the court is deemed to have submitted the action to the jury subject to a later determination of the legal questions raised by the motion.* (Emphasis added.)

The United States Supreme Court has approved this practice under Rule 50(b). *Neely v. Martin K. Eby Constr. Co.*, 386 U.S. 317, 87 S.Ct. 1072, 18 L.Ed.2d 75 (1967); *Montgomery Ward & Co. v. Duncan*, 311 U.S. 243, 61 S.Ct. 189, 85 L.Ed. 147 (1940).

The power of the court to withdraw cases from the jury in a case such as this appears to be firmly rooted in history and tradition.

Therefore, I must conclude that the trial court's decision to grant a Judgment Notwithstanding the Verdict did not violate Fluharty's constitutional right to a jury trial as set forth in Article VI, Section 6, of the South Dakota State Constitution and the Seventh Amendment to the United States Constitution.